Richard G. BUZZEO, Plaintiff,

v.

Patricia R. HARRIS, Secretary of Health, Education, and Welfare, Defendant.

No. 79 Civ. 556.

United States District Court, S. D. New York.

March 14, 1980.

Robert T. Anker, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; Leona Sharpe, Asst. U. S. Atty., Frank V. Smith, III, Acting Regional Atty.–Region II, Linda Lee Walker, Asst. Regional Atty.–Region II, Office of Gen. Counsel, Dept. of Health, Education, and Welfare, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff commenced this action pursuant to 42 U.S.C., section 405(g) to review a final determination of the Secretary of Health, Education, and Welfare (the "Secretary") denying his claim for a period of disability and disability insurance benefits. The Secretary moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. At issue, essentially, is whether the Secretary's determination that plaintiff is not "disabled" as that term is defined in the Social Security Act (the "Act")[1] is supported by substantial evidence.[2] Upon a word-by-word study of the entire administrative record, the Court concludes that it is not and that the matter should be remanded for rehearing.

Plaintiff was a police officer with the New York City Police Department from 1969 until October 1977 when he was granted a disability retirement pursuant to Police Department rules.[3] In 1972 he was involved in an auto accident during the course of his duties. He suffered a head injury diagnosed as a concussion and a lower back injury. As a result of these injuries, plaintiff claimed and was ultimately awarded a period of disability benefits under the Act from January 11, 1972 to September 3, 1973 at which time he returned to light duty assignment with the Police Department.

Plaintiff again filed for disability benefits under the Act in July 1977 alleging a complete inability to work from December 7, 1976 due to the continuing symptoms of the same injuries involved in the first claim. These symptoms include constant headaches, backaches, spells of vertigo and frequent blackouts. Plaintiff's second claim was denied initially and upon reconsideration. At his request a hearing was held before an Administrative Law Judge ("ALJ") in March 1978. The ALJ made a de novo determination that plaintiff was not under a statutory disability at any time at or prior to the date of his decision. Upon administrative appellate review, this decision became final in August 1978, following which this action for judicial review was commenced.

Plaintiff's allegedly disabling condition consists of post-concussion syndrome and chronic low back syndrome manifested by severe headaches, back pain, dizziness, and blackouts.[4] It is not disputed that plaintiff suffers from an impairment within the

---

1. 42 U.S.C. §§ 423(d)(1)(A) & (d)(2)(A). *See Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975).

2. 42 U.S.C. § 405(g).

3. The record indicates that plaintiff last worked on December 7, 1976 when he was placed on continuous sick leave from the Police Department.

4. There is also a claim, supported to some extent by plaintiff's wife's testimony and by the medical reports in the record, that plaintiff's malady has a psychological component as well. Additionally, plaintiff has had cartilage removed from his knees and cannot bend his left knee.

meaning of the statute.[5] There is also no dispute that plaintiff's impairments cause him pain and discomfort and prevent him from engaging in his previous employment as a police officer. Indeed, the ALJ made specific findings to this effect. Thus, the question presented by the record is the relatively narrow one whether, considering his age, education and work experience, plaintiff's impairment is such as to prevent him from engaging in any substantial gainful activity as required by the Act.[6] The Secretary answered this question in the negative. More specifically, the ALJ found that the plaintiff, despite his impairments, "retains the functional capacity to engage in types of sedentary work activity which are not contra indicted [sic] by his impairments."[7]

■■■ Once a claimant has established, as plaintiff admittedly has, an impairment disabling him from continuing in his former employment, the burden of going forward with evidence devolves upon the Secretary who must then show that the claimant, given his age, education, work experience and physical shortcomings, possesses the capacity to perform alternate work.[8] The Act requires that agency action be sustained if the decision is based on "substantial evidence" in the record, that is, " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[9] In making this determination the Court must consider all the evidence in the record, including "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."[10]

The medical evidence in the record consists entirely of the reports of doctors who examined plaintiff in connection with his application for a disability retirement from the Police Department. They demonstrate a general consensus among the examining physicians that plaintiff suffers from permanent post-concussion syndrome and chronic low back derangement and that he is incapable of serving as a police officer. None of the reports, however, assay to evaluate plaintiff's residual functional capacity in either descriptive or diagnostic, physical or psychological terms. None state that plaintiff is capable of other, sedentary employment, nor that he is not capable. The doctors were not called upon to make such an assessment. The Secretary did not require plaintiff to submit to an examination by a designated physician to obtain his view as to plaintiff's capacity for sedentary work in precise terms based upon clinical findings.[11] The medical record is, on the whole, bereft of evidence which directly or by in-

5. 42 U.S.C. § 423(d)(3) reads in pertinent part: "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

6. 42 U.S.C. § 423(d)(2)(A).

7. The ALJ specified certain clerical jobs and "sedentary non-strenuous factory work" existing in significant numbers in the New York metropolitan area.

8. See Stephens v. Secretary, HEW, 603 F.2d 36, 41 (8th Cir. 1979); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979); Hall v. Secretary, HEW, 602 F.2d 1372, 1377 (9th Cir. 1979); Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978); Phillips v. Dep't of HEW, 453 F.Supp. 1047, 1051 (S.D.N.Y.1978); Hernandez v. Califano, 453 F.Supp. 1218, 1222–23 (D.Idaho 1978); McMillen v. Califano, 443 F.Supp. 1362, 1365–66 (N.D.N.Y.1978); Grable v. Secretary, HEW, 442 F.Supp. 465, 469 (W.D.N.Y.1977); Vines v. Califano, 442 F.Supp. 471, 475 (W.D.La.1977).

9. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

10. Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). See Gold v. Secretary, HEW, 463 F.2d 38, 41 n.2 (2d Cir. 1972); Kaminski v. Califano, 465 F.Supp. 367, 370 (S.D.N.Y.), aff'd, 614 F.2d 1288 (2d Cir. 1979).

11. 20 C.F.R. § 404.1527 (requiring claimant to submit to examination by designated physician). See Grable v. Secretary, HEW, 442 F.Supp. 465, 471 (W.D.N.Y.1977).

ference either supports or contradicts the ALJ's finding.[12]

Similarly, the testimony at the hearing before the ALJ, while it does not necessarily contradict a finding that plaintiff was capable of sedentary work, does not provide substantial evidence to support such a finding. The plaintiff testified and described the symptoms and conditions that prevented him from performing even the light Police Department duty at which he had last been employed and which was of a sedentary nature.[13] He testified that he was forced to give up his light duty assignment because he could not concentrate and misfiled papers.

He stated that he could not sleep at all; that he suffered severe head and back pain; that he lacked the ability to work at anything for more than an hour and a half; that he had been forced to take very frequent sick day leaves; and that he was subject to dizzy spells about three times a week, about half of which rendered him unconscious. This inability to perform his light duty assignment for the Police Department, which was not contradicted or questioned, casts serious doubt upon the validity of the ALJ's finding that plaintiff possessed the capacity to engage in even sedentary employment. So, too, the testimony of plaintiff's wife that his physical condition has had a deteriorating effect upon his emotional state and behavior undermines the finding that plaintiff was capable of gainful employment.

■ The ALJ found it significant that plaintiff stated that he could stand for 45 minutes to an hour, sit for 15–20 minutes at a time and walk for 20–40 minutes, and that plaintiff had not seen a doctor since November 1977 (although he continued to take medication). These statements of plaintiff's physical limits do not, however, indicate in and of themselves an ability to work and must be viewed in light of his additional statements about his inability to concentrate on tasks, his need to lie down periodically, and his propensity for dizzy spells. Plaintiff's failure to see a doctor is also not particularly germane to his capacity for performing sedentary labor. In sum, this testimony, without more, does not constitute substantial evidence that plaintiff possessed the residual functional capacity to engage in the specified sedentary employment.

■ The ALJ arranged for the testimony of a vocational expert. The expert testified, in response to a hypothetical question posed by the ALJ, that sedentary jobs in the clerical and industrial areas exist in significant numbers in the New York metropolitan area. The hypothetical to which he replied, however, *assumed* a finding that plaintiff was capable of performing sedentary labor subject to specified restrictions— an assumption of the ultimate fact to be established. Thus the expert's testimony is not probative of the issue whether plaintiff in fact possessed such capacity. Significantly, one of the jobs the expert found plaintiff capable of performing was that of a file clerk—the very light duty job at the Police Department he was forced to give up because of his physical and mental problems. In any event, a vocational expert's opinion that a claimant can engage in sedentary employment provides substantial evidence to deny a claim only if there is sufficient medical evidence to support a finding that the claimant possesses the functional physical capacity to do so.[14] In short, the vocational expert's testimony, based upon an assumption of the very fact

---

**12.** It is noteworthy, however, that during the period when these medical examinations took place, plaintiff's duties with the Police Department, which the doctors found him incapable of performing, were not the arduous duties of an officer on the street but extremely light clerical work.

**13.** His assignment was to a precinct house 10 blocks from his home where he performed clerical work, mainly filing. He was picked up and returned by radio car. His shift was from 8:00 a. m. to 4:00 p. m. and he was allowed "carte blanche" to lie down on a cot during the day.

**14.** *See Spicer v. Califano*, 461 F.Supp. 40, 47 (N.D.N.Y.1978) (citing cases). *Cf.* 20 C.F.R. § 404.1505(a) (Residual functional capacity).

694

to be established, is insufficient to support the ALJ's finding.

Viewing the record as a whole, the Court finds that the ALJ's finding, adopted by the Secretary, that plaintiff retains the functional capacity to engage in sedentary labor is not supported by substantial evidence. Because the Secretary did not have evidence based upon a medical examination of the plaintiff made in connection with his claim under the Act with a view toward assessing his claim of statutory disability; and, further, because the record as it now stands is of little value in evaluating plaintiff's residual functional capacity for gainful employment, the purposes of the Act will be best served by reversing and remanding the case to the Secretary for further proceedings.[15]

The record, as here submitted, is inadequate from both the Secretary's and claimant's positions. The remand will afford each the opportunity to adduce further medical evidence that will either confirm or contradict plaintiff's claim. Plaintiff was, at his request, granted the opportunity during his administrative appeal to submit additional evidence but thereafter declined to do so and instead commenced this action. He is now in a position, if so advised, to offer any additional evidence to support his claim.

Accordingly, the determination of the Secretary is reversed and this case is remanded for further proceedings.

So ordered.

---

15. 42 U.S.C. § 405(g). *See Bastien v. Califano*, 572 F.2d 908, 913 (2d Cir. 1978). *Cf. Eiden v. Secretary, HEW*, 615 F.2d 63 (2d Cir. 1980).