Rosalie GRAHAM, George Simpson and James Peggues, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant.

Civ. A. No. 83–0202–C(K).

United States District Court, N.D. West Virginia, Clarksburg Division.

Nov. 14, 1983.

Betsy Hutchings, Social Security Project, Morgantown, W.Va., for plaintiffs.

William Kolibash, U.S. Atty., Wheeling, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

KIDD, District Judge.

This action was brought under the provisions of 42 U.S.C. § 405(g) and 28 U.S.C. § 1361 and is currently before the Court upon the defendant's motion to dismiss or for summary judgment. The Secretary of Health and Human Services (hereinafter "Secretary" or "defendant") says the Court lacks jurisdiction over her person and the claims presented.

The essential and underlying issue in this case is whether the Secretary can properly terminate social security disability benefits without any showing that the claimant's condition has improved to the extent that he is no longer "disabled" within the meaning of the law.

The complaint and argument of the plaintiffs reflect that the Secretary has abandoned the "medical improvement" standard [1] for determining when social security benefits should be terminated and now applies the "current disability" standard [2] to cessation cases. The plaintiffs say that allowing termination of benefits without a showing of medical improvement is contrary to the Social Security Act itself, the Secretary's own regulations, and numerous federal court decisions. Plaintiffs say that the Secretary's policy of ignoring medical improvement is contrary to law and unconstitutional.

I

■ The Secretary first insists that the plaintiffs have failed to exhaust their administrative remedies and without administrative finality jurisdiction is lacking.[3] The exhaustion requirement for judicial review of § 405 claims has been held to include "waivable" and "nonwaivable" elements. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).[4]

"... The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary." *Id.* at 328, 96 S.Ct. at 899.

Thus, if no claim at all has been presented to the Secretary, then there can be no federal court jurisdiction. However, if there has been some administrative claim for benefits then the exhaustion requirement can be waived either expressly, by the Secretary, or by implication as by presentation of a constitutional claim which is "entirely collateral to [the] substantive claim of entitlement." *Id.* at 330, 96 S.Ct. at 900.

Here, the nonwaivable requirement has been met. Claims have been made by the named plaintiffs, and the prospective class members only include those "who have applied for disability benefits."

---

1. The "medical improvement" standard, formerly followed by the Secretary, required the Secretary to compare a social security recipient's current condition with that condition existing at the time of review and terminate benefits only if the recipient's condition had improved to the point that he could resume substantial gainful activity.

2. The "current disability" standard which the plaintiffs say the Secretary now follows in cessation cases allows benefits to be terminated without comparing past and present medical conditions; the standard is the same as used when initially reviewing a disability claim.

3. 42 U.S.C. § 405(g) provides, in part:

"Any individual, after any *final decision* of the Secretary made after a hearing to which he was a party, ... may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States ...". (*emphasis added*)

4. *Taken from, Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

The Secretary argues that waivable element is not present in this case because "... the plaintiffs' claims are *not entirely collateral* to their substantive claims for disability benefits ..." (*emphasis original*). In this case all of the plaintiffs say that an illegal standard is being used to terminate their benefits; *i.e.*, the Secretary is finding that they are no longer disabled without determining that their condition has improved medically. The Secretary insists that all of these plaintiffs can develop facts at the administrative level which would establish continued entitlement to benefits.

■ There are times when a "final decision"[5] by the Secretary is inferred although steps in the administrative procedure remain open. It is well recognized that one need not continue administratively if such proceedings would be "futile and wasteful". *Weinberger v. Salfi*, 422 U.S. 749, 767, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975). Similarly, if the constitutional claims are collateral to the substantive claims then finality is inferred. *Mathews v. Eldridge, supra* 424 U.S. at 330, 96 S.Ct. at 900. The *Eldridge* court also recognized that "... an erroneous termination [of benefits] would damage [the claimant] in a way not recompensable through retroactive payments." *Id.* at 331, 96 S.Ct. at 901. The ruling in *Eldridge* is not only instructive but controlling.

■ The Secretary, in the *Eldridge* case, terminated the claimant's benefits after considering certain documents and medical reports. The claimant said he was deprived of due process because he was not afforded a hearing, bypassed further administrative channels and made his constitutional challenge in federal court. For the reasons above noted, the Supreme Court held that the claim was properly brought to the attention of the courts.

In support of her position the Secretary places almost total reliance upon the case of *Smith v. Schweiker*, 709 F.2d 777 (2nd Cir.1983).[6] In *Smith*, the Second Circuit

was confronted with the exhaustion problem currently before this Court, distinguished the *Eldridge* holding and ruled that "[t]he claims raised in this action are hardly collateral to the demand for benefits." *Id.* at 780. The court said exhaustion would not be futile because the facts developed administratively might result in restoration of benefits. The *Smith* court also believed that exhaustion would help clarify the issue of what is meant by medical improvement. Neither was that court convinced that the potential harm to the claimants was irreparable. *Smith, supra* at 780–781.

Plaintiffs here say that the Second Circuit, in *Smith*, did not consider the fact that the Secretary of Health and Human Services had taken a final, consistent position on the medical improvement issue, and if that position were fixed, it might have ruled otherwise. This is indeed an important factor and was obviously a major concern of the *Smith* court. *See also Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). When considering the instant issue, Judge Ralph Winter, Jr., for the Second Circuit, wrote:

"Exhaustion, moreover, would frame the issue in a much clearer fashion than is possible when it is posed as an abstraction. While the legal issue raised by plaintiffs may seem well-defined to them, it seems rather unformulated to us. What is meant by evidence of medical improvement, for example, is somewhat ambiguous. If disability status has been previously determined on the grounds of paralysis from the neck down, a video tape of the claimant playing football might well seem sufficient evidence to terminate benefits. Yet plaintiffs seem at times to be arguing that unless the claimant's health has improved, *i.e.* the paralysis has disappeared rather than having been initially misdiagnosed, a termination of benefits is unlawful however conclusive the evidence of no present disability. At other times they seem to

---

5. 42 U.S.C. § 405 provides for judicial review only after a "final decision" by the Secretary.

6. The case of *Kuehner v. Schweiker*, 547 F.Supp. 49 (E.D.Pa.1982) and several unpublished district court cases are also cited.

require medical testimony as essential to termination. It is also not clear why, if the initial disability determination was based on a finding of a lack of suitable jobs in the economy, evidence of a medical improvement is necessary where a different finding as to the availability of such jobs based on new evidence is made. We note this, not to comment on the merits, but to suggest that the claim raised by plaintiffs may seem far stronger, and certainly more clearly framed, when urged in the context of a concrete case, developed in the reviewing process, with a factual record setting out the reasons for the prior ruling and subsequent termination, than when posed in the abstract."

*Id.* 709 F.2d at 780–781.

In the case now before the Court, factual development, no matter how detailed, would not assist in the determination of whether substantive or procedural due process is violated by terminating disability benefits when there has been no showing that a person's condition is medically improved.[7]

Based upon the Secretary's position and the many cases in which this phrase has been at issue, it does not seem that ambiguity is present.

The Secretary says that benefits will cease if "... current evidence shows that the individual is able to engage in SGA (substantial gainful activity) regardless of whether actual improvement can be demonstrated." 45 Fed. Register 55583 (Secretary's response to comment). There is no argument offered by the Secretary that this is not the standard nor is it alleged that there is ambiguity in its meaning. At this point in the litigation the Court is not concerned with the merits of the individual claims presented; the Court is only concerned with whether the entire action is properly pending here.

The most recent case to address the jurisdictional issues raised here was only decided in September 1983. In *Kuehner, et al. v. Schweiker,* 717 F.2d 813 (3rd Cir. 1983)[8] the Third Circuit was confronted with matters essentially identical to those now presented. The *Kuehner* case presented the same jurisdictional issue as well as the same underlying constitutional issues which now confront this Court. In brief, the Third Circuit held that a federal court does have jurisdiction over the subject matter of cases like the one before this Court under 42 U.S.C. § 405(g) and 28 U.S.C. § 1361.

The *Kuehner* court, following its own precedent, rejected the contention that *Eldridge* only permits judicial waiver of exhaustion of constitutional issues which are "entirely collateral" to the substantive claims. *Id.* 717 F.2d at 818. The Third Circuit is of the opinion that the waivable element addressed in *Mathews v. Eldridge* is present, and exhaustion will be found, if the Secretary has taken a final position with respect to the constitutional (or statutory) issues involved. The Secretary has taken such a position as evidenced by the exhibits in this case and refusal of the Secretary to acquiesce in the many decisions criticizing the review standard in cessation cases.

What purpose can be furthered by finding that this case is not ripe for judicial consideration? Perhaps the *only* justification for requiring complete exhaustion would be to show absolute deference to the fundamental principle of separation of powers. However, to require further exhaustion would be futile in the sense that it would create great waste of judicial and administrative resources.[9] It would not aid

---

**7.** In this case the Court will not rule upon the issue of whether any particular plaintiff is entitled to benefits, but rather will only decide whether the Secretary can terminate benefits without finding that an individual's physical or mental condition has improved. A ruling which is adverse to the Secretary would simply mean that she must re-evaluate cases such as those here presented and determine whether there has been improvement in the individual's condition.

**8.** Reversing *Kuehner v. Schweiker,* 547 F.Supp. 49 (E.D.Pa.1982).

**9.** The Court says this because the Secretary admits, in effect, that she need not follow a medical improvement standard in cessation cases. The plaintiffs in this case, and potential plaintiffs, are only those whose benefits have been terminated "without any finding ... [of] ... a

the Court in factual development because facts going to an individual's medical condition are not relevant for purposes of deciding the constitutional or statutory issues presented. Exhaustion would certainly retard the plaintiffs' interests in prompt disposition of their very important claims. Contrary to argument presented, the "Secretary's expertise" will be of no value to this Court when deciding an issue such as the proper standard of review in a disability termination case. Finally, the constitutional issues here are not "inextricably intertwined" with the substantive claims in any sense other than any time jurisdiction is in question the substantive claim must be in jeopardy.

The Court, having inspected the record in this case, finds that the defendant has been properly served with the complaint and summons and, therefore, her argument of no personal jurisdiction is now without merit.

For the reasons contained herein, the Court is of the opinion that it does have jurisdiction over the claims and the defendant.

## II

Having found that the Court has jurisdiction over the claims and parties the analysis now turns to a determination of whether an injunction should issue.

Before issuing injunctive relief this Court must balance the hardships which will result if the relief requested is granted. *Blackwelder Furniture Company of Statesville, Inc. v. Seilig Manufacturing Company, Inc.*, 550 F.2d 189 (4th Cir.1977). The *Blackwelder* balancing test involves first weighing the potential harm accruing to the parties if their opponent would prevail on the motion, and next determining the likelihood that the plaintiff will prevail on the merits, and finally, weighing the public interest.

## A

The Secretary says she would suffer irreparable harm if the injunction issues be-

cause "there will be an immediate financial drain on the Social Security Trust Funds" and the administrative process will be disrupted. In addition, she argues that such relief would set poor precedent.

On the other hand, the plaintiffs allege that failure to enjoin the Secretary will lead, and has led, to a great financial burden upon them which has resulted in difficulty in providing for life's essentials such as food and clothing. Furthermore, plaintiffs argue that loss of benefits has a detrimental effect upon their physical and mental well being. Named plaintiffs have filed affidavits of the hardships created, and anticipated, by loss of income and have offered testimony on this issue. Based upon the nature of this case the Court is of the opinion that the plight of the unnamed potential plaintiffs is not substantially different from those who have been named herein.

In essence, if an erroneous standard is being applied by the Secretary, and as will be seen *infra* this is the Court's preliminary opinion, a financial drain and administrative inconvenience are of little importance to the Court.

The Court is of the opinion that the balance of hardships weighs heavily in favor of the plaintiffs.

## B

 The underlying issue in this case is the appropriate standard to be applied in Social Security disability cessation cases. What is the likelihood that the plaintiffs will prevail on this issue?

As earlier mentioned, the defendant is applying the "current disability" standard for determining whether a disability recipient continues to be disabled. The Secretary does not allege that this is not the standard being used. The essence of this entire law suit is the plaintiffs' assertion that before disability benefits can be terminated there must be some finding that a recipient's condition has improved medically.[10]

---

change in their medical condition." *Plaintiff's Motion for Class Certification.*

10. *See,* Footnotes 1 and 2.

The law defines "disability" essentially as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ...". 42 U.S.C. § 423(d)(1)A; *see also*, 20 C.F.R. § 404.1505. In order to become eligible for benefits the claimant has the initial burden of proving entitlement by showing he can no longer perform his past work. 20 C.F.R. § 404.1512(a). Absent proof by the Secretary that the claimant retains the capacity to do other work, benefits are awarded. *E.g., Johnson v. Harris*, 625 F.2d 311 (9th Cir.1980). In general, the rules provide that disability benefits can be stopped "[w]hen the medical or other evidence in [a] file shows that [the] disability has ended ...". 20 C.F.R. § 404.1594(a).[11] In a statement contained in 45 Fed.Reg. 55566 (1980), the Secretary explained revisions made in Subpart P of Part 404 of the regulations and included mention of "policies which we are now following in evaluating disability and blindness." Included among the 1980 policy changes was the following:

"In §§ 404.1579, 404.1586, 404.1594 and 416.994 we explain a *new policy* on when disability is considered to stop. At one time we would not find that disability or blindness had stopped unless the medical evidence showed that the person's condition had improved since we last determined that he or she was disabled. About three years ago, we changed this policy and began to find that disability or blindness had stopped if we found, on the basis of new evidence, that the person was not disabled or blind as defined in the law." (*emphasis added*).

45 Fed.Reg. 55568. Likewise, in responding to public comments regarding Social Security cessation cases the Secretary stated:

\* \* \* \* \* \*

"These recodified regulations make it clear that disability ends when current evidence shows that the individual is able to engage in SGA regardless of whether actual improvement can be demonstrated.

45 Fed.Reg. 55583.[12]

It is clear that the Secretary has abandoned the medical improvement standard in favor of the current disability standard. The question becomes whether use of this new standard is legally permissible.

The statute itself provides certain contingencies which, if occur, allow the Secretary to terminate benefits. Among the reasons for stopping payments is a finding that "disability ceases." 42 U.S.C. §§ 423(a)(1) and 425. In an effort to give body and meaning to the term "ceases", the Secretary, until recently, has followed the reasoning that disability ceases when a claimant has improved medically to the point of being able to again engage in substantial gainful activity. The courts have consistently followed this standard. *Miranda v. Secretary of Health, Education and Welfare*, 514 F.2d 996 (1st Cir.1975); *Hayes v. Secretary*, 656 F.2d 204 (6th Cir.1981); *Finnegan v. Schweiker*, 641 F.2d 1340 (9th Cir.1981) (involving the Act's § 1382 "grandfather" clause); *Leyva v. Harris*, 514 F.Supp. 1313 (D.C.N.Y.1981); *Timblin v. Harris*, 498 F.Supp. 1107 (W.D.Pa.1980); *Rivas v. Weinberger*, 475 F.2d 255 (5th Cir.1973).

Following recognition of the 1980 policy change of the Secretary, many courts were confronted with issues involving the propriety of the Secretary abandoning the improvement standard. Courts addressing the conflict have overwhelmingly held that the Secretary must base a decision to terminate benefits upon evidence that the condition of the beneficiary has improved. *E.g., Patti v. Schweiker*, 669 F.2d 582 (9th Cir.1982); *Kuzmin v. Schweiker*, 714 F.2d 1233 (3rd Cir.1983); *Trujillo v. Schweiker*, 558 F.Supp. 1058 (D.C.Colo.1983); *Simpson v. Schweiker*, 691 F.2d 966 (11th Cir. 1982).

"... in order to terminate benefits, it will not be necessary to determine whether or how much the individual's condition has medically improved...".

---

**11.** There are other reasons for terminating benefits which are not here in controversy.

**12.** *See also,* Soc.Sec. Ruling No. 81–6 (Jan.1981) which reads, in part:

In an opinion decided on October 6, 1983, the Fourth Circuit Court of Appeals was confronted with the issue of the burden of proof in cessation cases. In, *Dotson v. Schweiker*, 719 F.2d 80 (4th Cir.1983), the Court, speaking through Judge Hall, held that after a claimant had proven that he was disabled a presumption of disability attached and it was for the Secretary to "... come forward with evidence that [the claimant] is not disabled." The Fourth Circuit reasoned that if there was not such a presumption after the initial finding of disability then the Secretary would be free to merely "submit the same medical evidence to different physicians time and time again until the Secretary obtains a favorable result."[13] Very importantly, the *Dotson* court reconciled its holding with the rulings in *Mathews, supra,* and noted that such a presumption did nothing to change the ultimate and continuing burden of persuasion but only shifted to the Secretary the burden of proof that disability had ended.

The *Dotson* decision was based largely upon the holding and rationale of *Patti v. Schweiker, supra,* in which the Ninth Circuit found that there was not substantial evidence that the claimant's condition had changed.

Except when nondisability factors are the reason for the termination of benefits, the Court is of the current opinion that the Secretary can only properly terminate disability benefits of a claimant when there is proof of medical improvement in the recipient's condition.

### C

 Finally, the Court is of the opinion that the public interest in this case rests with preserving the financial *status quo* of the plaintiffs pending final resolution of the primary issue raised.

A primary purpose of the Social Security Act is to "provide persons dependent on the wage earner with protection against the economic hardship occasioned by loss of the wage earner's support." *Califano v. Jobst,* 434 U.S. 47, 50, 98 S.Ct. 95, 97, 54 L.Ed.2d 228 (1977). Stated another way, a general purpose of the Act "is to protect workers and their dependents from the risk of loss of income due to the insured's old age, death or disability",[14] or to "ameliorate some of the rigors of life."[15] In addition, it is often recognized that the Act is to be "accorded a liberal application in consonance with its remedial and humanitarian aims." *Eisenhauer v. Mathews,* 535 F.2d 681, 686 (2nd Cir.1976).

The defendant asserts that granting the injunction will be detrimental to the public interest by again saying that such relief would serve to "drain the Social Security Trust Funds" and could "cause possible delays in the review of other cases."

It is the Court's judgment that Congress desired to protect the old and infirm and did not design the Social Security system with the foremost consideration being smooth administration and austerity. It is the Court's opinion that the public interest would best be served by following the intent of the Legislature.

### III

 The plaintiffs seek class certification in this matter pursuant to Rules 23(a) and 23(b)(2), *Fed.Rules Civ.Proc.* These rules provide, in turn and in part, as follows:

"(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

---

**13.** Neither would the *res judicata* effect of such administrative determinations have any meaning if the Secretary remained free to select and reselect expert opinions which interpreted existing medical data.

**14.** *Kelbach v. Harris,* 634 F.2d 1304, 1309 (10th Cir.1980).

**15.** *Dvorak v. Celebrezze,* 345 F.2d 894, 897 (10th Cir.1965).

"(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or ..."

The plaintiffs say that the proposed class is designed to encompass all persons:

(a) Who have applied for disability benefits under the Social Security Act;

(b) Who have been found by the Secretary to be under a disability as defined in the Social Security Act, 42 U.S.C. § 416(h) and determined to be eligible for monthly disability benefits under the Act;

(c) Whose disability has been determined by the Secretary to have ceased;

(d) Whose disability has been determined to have ceased based on medical factors;

(e) Who have had or are threatened with having their monthly benefit checks stopped; and

(f) Who have had or are threatened with having their disability benefits terminated without any finding that either (i) there has been a change in their medical condition since the time that the Secretary first determined that they were under a disability as defined in the Act or (ii) that the original favorable decision was erroneous.

The Secretary opposes class certification saying the Court lacks jurisdiction over the claims and the defendant and also that the class requisites of numerosity, commonality and typicality are not present.

The Court has ruled upon the issue of jurisdiction and is of the opinion that analysis of the argument of the parties reveals the requisites of numerosity, commonality and typicality are present, and further, that the class is sufficiently defined and narrowed to warrant provisional certification. The Court will reserve a final judgment regarding class certification and may redefine the class urged by the plaintiffs after further development of the facts and argument of the parties. Upon a final determination of the class issue, the Court will set forth facts upon which its conclusions are based.

IV

For the foregoing reason the Court is of the opinion that it does have jurisdiction over the parties and the subject matter of this litigation and that a class of plaintiffs should be conditionally certified, and is further of the opinion that a preliminary injunction should issue.

It is, therefore, ORDERED that the motion of the Secretary to dismiss, or for summary judgment, on the jurisdictional issues be, and hereby is DENIED.

It is FURTHER ORDERED that the Secretary of Health and Human Services be, and hereby is, ENJOINED from:

1. Reviewing the disability claims of the members of the class which has been conditionally certified; and

2. Terminating the benefits of any class member absent a finding that the individual's medical condition has improved to the point that the individual is no longer disabled within the meaning of the law; and

3. Withholding past and future benefits of class members whose physical or mental conditions have not been found to have improved medically.