Lawrence **LANZISSERO**, Plaintiff,

v.

Margaret M. **HECKLER**, Secretary of Health and Human Services, Defendant.

No. 83 Civ. 0396.

United States District Court, E.D. New York.

Feb. 27, 1984.

Blum, Ross, Weisler, Bergstein & Golden, Samuel H. Golden, Lawrence, N.Y., for plaintiff.

Asst. U.S. Atty. Michael P. DiRaimondo, E.D.N.Y., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff Lawrence Lanzissero brings this action pursuant to section 205(g) of the Social Security Act, as amended (the "Act"), 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services (hereinafter referred to as the "Secretary"), which terminated plaintiff's entitlement to disability insurance benefits ("SSI"). The government has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

Plaintiff received SSI benefits for a period of disability commencing May 11, 1979. The Secretary initially determined that plaintiff's disability ceased in June 1981. This decision was affirmed on reconsideration. A hearing before an Administrative Law Judge ("ALJ") was held on June 25, 1982. The ALJ determined that plaintiff's disability ceased as of August 1981 and that plaintiff was capable of performing sedentary work as an electrical assembler. The Appeals Council affirmed the decision of the ALJ, but determined that plaintiff's disability ceased in June 1981. The decision of the ALJ became the final decision of the Secretary when it was affirmed, as modified, by the Appeals Council on December 22, 1982.

The only issue presented to this Court is whether the Secretary's decision that plaintiff's disability ceased is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). For the reasons discussed below, the defendant's motion is denied. This action is remanded to the Secretary for a reevaluation of the evidence submitted.

*Facts*

Plaintiff is a 54 year old Marine Corps veteran with an eleventh grade education. He previously worked as an elevator repairman from 1953 through May 1979, when he was injured in a work-related accident. Plaintiff complains of frequent pain in his right knee and leg and stiffness and some pain in his left ankle. He testified that he has frequent leg cramps, Tr. 38, and that he takes medication which appears to provide only temporary relief from pain. *Id.* Plaintiff states that he has pain in his legs when sitting or walking, and that he falls down frequently when his right knee gives way. Plaintiff broke five ribs in August 1979 when he fell due to instability in his legs, Tr. 119–27, and testified that just prior to his hearing before the ALJ, he bruised his ribs in this same manner. Plaintiff uses a cane when he stands and sits to relieve pressure on his right leg, Tr. 39, and testified that he drives only rarely because of the pressure exerted on his right ankle. Tr. 39–40. Plaintiff uses a brace on his right knee. He testified that he is supposed to do knee-raising exercises to strengthen his right leg and that he does these exercises "on occasion." Tr. 40.

Plaintiff further testified that he can walk for about one block before he has to sit for twenty to sixty minutes to relieve the pain. Tr. 42–43. Plaintiff's wife does most of the housework, although he helps her with the dishes and takes out the gar-

bage. Tr. 38, 43. He stated that he cannot use public transportation because he cannot manage the steps. He testified that his social activity is limited, in that he does not go to the movies or church or do lawn work at least in part due to the pain in his legs. Tr. 44.

Plaintiff, who was represented by counsel before the ALJ and this Court, offered several medical reports in support of his claim of disability. Dr. Dunbar, a treating physician, reported that plaintiff suffered from an unstable right knee and had a healed fracture of the left ankle. He stated that plaintiff would probably require further knee surgery, that plaintiff could not return to his former job, and that plaintiff could not crouch and could not stand or walk for a prolonged period of time. Tr. 151–65. He suggested that plaintiff receive vocational rehabilitation and advised that plaintiff be retrained for some type of sedentary work. Tr. 152. Dr. Dunbar did not otherwise discuss plaintiff's residual functional capacity.

Dr. Maurillo, another treating physician, reported in a brief note that plaintiff has total instability of the right knee and is "permanently totally disabled for all forms of employment." Tr. 191. In a report submitted subsequent to the hearing before the ALJ, Dr. Maurillo diagnosed plaintiff as having an unstable right knee and synovitis left ankle. Dr. Maurillo recommended reconstructive surgery for the right knee and requested authorization from the compensation carrier for such surgery. Tr. 193. His report reiterated his opinion that plaintiff was unable to work. In his decision, however, the ALJ apparently overlooked the report of clinical findings of Dr. Maurillo submitted after the hearing. The ALJ's decision concluded that Dr. Maurillo's opinion was "unsupported by specific and complete clinical findings and is controverted by substantial medical evidence" and "is not dispositive of claimant's continuing disability." Tr. 16. Although the ALJ overlooked the clinical findings submitted by Dr. Maurillo, Dr. Maurillo's

report is the only report in the record which states affirmatively that plaintiff is unable to work.

Dr. Fiks, a consulting psychiatrist, reported that plaintiff has adjustment reaction of adult life with depression. He stated that plaintiff has a limited concentration span and that plaintiff's claims (anger, moodiness, depression, limited concentration span) are consistent with his difficulties, Tr. 167, and rated plaintiff's mental residual functional capacity to be mildly to moderately impaired.

Dr. Sarwal, a consulting surgeon, reported that plaintiff has ankylosis of the right knee with degenerative arthritis. Tr. 146. He noted atrophy of the muscles in both of plaintiff's legs and that right knee flexion was possible only up to forty-five degrees. Dr. Sarwal stated that plaintiff could sit two hours, stand one hour, and walk one-half hour. He further reported that plaintiff could lift up to fifty pounds, carry up to twenty pounds and bend. In Dr. Sarwal's opinion, plaintiff cannot squat. Grasping and fine manual manipulation were within normal limits and pushing and pulling were limited by thirty percent. A residual functional capacity chart recites Dr. Sarwal's findings. Tr. 148.

I note at this point that the ALJ improperly interpreted Dr. Sarwal's report. As stated above and at page 146 of the transcript, Dr. Sarwal stated that plaintiff could sit for two hours daily. In his decision, however, the ALJ stated that Dr. Sarwal reported that plaintiff could sit two *to four* hours per day. Tr. 15. The ALJ apparently misread Dr. Sarwal's RFC evaluation, Tr. 148, where the doctor *crossed out* four hours where plaintiff's residual functional capacity to sit is indicated. A reading of Dr. Sarwal's written report would confirm this evaluation. Tr. 146. Neither interpretation of Dr. Sarwal's report regarding plaintiff's capacity to sit, however, establishes that plaintiff is able to perform sedentary work.[1]

---

**1.** 20 C.F.R. § 404.1567(a) sets forth the exertion-   al requirements for sedentary work as follows:

Dr. Scott, another consulting physician, diagnosed that plaintiff suffered from instability of the anterior and posterior cruciate ligament and capsular segments of the right knee, with limited motion in the right knee. Tr. 173. He stated that plaintiff has a "moderate partial disability and it is felt that the patient is unable to perform functions which would incorporate long standing[,] walking or acute knee flexion. It is felt that the patient could perform other sedentary duties, which did not involve these physical requirements." *Id.* Dr. Scott did not provide any specific evaluation of how long plaintiff could sit, stand or perform other functions, however.

A vocational expert, Mr. Oliver, also testified at the hearing before the ALJ. The expert immediately noted that plaintiff used a cane while sitting. Tr. 45. When asked by the ALJ to *assume* that plaintiff could perform sedentary work, Mr. Oliver stated that plaintiff could perform the job of electrical assembler, which required sitting all day. Tr. 50. However, the expert noted that if plaintiff was unable to travel to his employment, he would not be able to work. Tr. 52. Mr. Oliver further stated that if plaintiff's pain would affect his concentration, he would be unable to perform work as an electrical assembler. Tr. 52–53.

In his decision, the ALJ found that plaintiff was unable to perform his past work but was capable of performing semi-skilled sedentary work as an electrical assembler. Tr. 17, 18. The ALJ found that the plaintiff was "able to perform certain activities of daily living which would be inconsistent with debilitating pain," such as helping his

wife with some housework, washing dishes and taking out the garbage. Tr. 17. The ALJ failed to note, however, plaintiff's testimony that when he does not have his cane, plaintiff leans against the sink when brushing his teeth, for example, to relieve the pressure on his leg. Tr. 46. Additionally, plaintiff braces his body in the corner of the room when helping his wife with the dishes so as to shift his weight from his right leg. Tr. 47.

*Discussion*

In evaluating an appeal from a denial of SSI benefits, the court must determine whether the decision of the Secretary is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2nd Cir.1975). This is true even if the court disagrees with the Secretary's decision. *Maldonado v. Mathews*, 424 F.Supp. 301, 303 (E.D.N.Y.1976). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to result in death or which has lasted and can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

In evaluating whether a claimant is disabled, the Secretary must perform the sequential analysis set forth in 20 C.F.R. § 404.1520. In the instant case, the Secretary determined that plaintiff could no longer perform his past work as an elevator repairman. Under such circumstances, the Secretary must evaluate plaintiff's "re-

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Social Security Ruling 83–10 elaborates:

"Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of stand-

ing or walking should generally total no more than about 2 hours of an 8-hour workday, and *sitting should generally total approximately 6 hours of an 8-hour workday.* Work processes in specific jobs will dictate how long a person will need to be on his or her feet to obtain or return small articles.

Soc.Sec.Rep.Serv. (West) at Ru 193 (May 1983) (emphasis added). In light of the exertional requirements for sedentary work promulgated by the Secretary herself, it is apparent that plaintiff is unable to perform sedentary work according to Dr. Sarwal's report no matter how that report is interpreted.

sidual functional capacity and ... age, education and past work experience to see if [claimant] can do other work." 20 C.F.R. § 404.1520(f).

The ALJ based his decision affirming the denial of benefits on the reports of Dr. Sarwal and Dr. Scott and on the ALJ's own assessment of plaintiff's subjective complaints of pain. Tr. 17. Included in his evaluation of plaintiff's complaints of pain were the ALJ's remarks concerning claimant's alleged ability to perform "certain activities of daily living." Tr. 17. As discussed *supra*, however, the ALJ did not take into account plaintiff's testimony about his need to use his cane or otherwise shift his weight when attempting to perform such tasks. In addition, Dr. Dunbar's and Dr. Sarwal's reports supply a medical basis for plaintiff's complaints of pain.

Finally, while Dr. Scott unequivocally states that plaintiff can perform sedentary work, Dr. Sarwal's report does not clearly "estimate," as the ALJ suggests, that "claimant retained a residual functional capacity which would permit him to perform sedentary work." Tr. 17. This conclusion is not stated anywhere in Dr. Sarwal's report. Tr. 145–46. Also, as discussed *supra*, the ALJ erroneously read Dr. Sarwal's report to state that plaintiff could sit two to four hours daily, when that report actually states that he can sit only two hours per day.

■ It is well established in this Circuit that the expert opinions of a treating physician as to the existence of a disability are binding unless contradicted by substantial evidence. *Eiden v. Secretary of Health, Education and Welfare*, 616 F.2d 63, 64 (2nd Cir.1980). In the instant case, the treating physicians disagreed concerning plaintiff's ability to work. Dr. Maurillo reported that plaintiff was unable to work and Dr. Dunbar suggested that plaintiff be retrained to do sedentary work, therefore implying that plaintiff could do such work. Dr. Scott agreed that plaintiff could perform sedentary work. Dr. Sarwal's report, upon which the ALJ heavily relied, does not

establish that plaintiff is capable of performing substantial gainful activity.

In a case involving the initial denial of SSI benefits, it is quite possible that the Secretary's decision would be upheld based on the Secretary's ability to resolve apparent conflicts in the evidence. *See, e.g., Roe v. Califano*, 433 F.Supp. 1157 (D.Md.1977); *Hutchinson v. Weinberger*, 399 F.Supp. 426 (D.Mich.1975). In the instant case, however, the ALJ's decision did not hinge upon the resolution of conflicting evidence. Rather, the record demonstrates that he misinterpreted Dr. Sarwal's medical findings and ignored the clinical findings of Dr. Maurillo. Also, Dr. Dunbar's suggestion that plaintiff be retrained does not unequivocally state that plaintiff is not disabled.

The record, therefore, presents conflicts of evidence which I do not find were adequately addressed by the ALJ. Also, this action is not one which seeks judicial review of a denial of benefits, but appeals from a termination of benefits. In considering the record before me, I therefore find it necessary to consider the issue of burden of proof.

Prior to 1980, the Secretary terminated SSI benefits by following a "medical improvement" standard, which "required the Secretary to compare a social security recipient's current condition with that condition existing at the time of review and terminate benefits only if the recipient's condition had improved to the point that he could resume substantial gainful activity." *Graham v. Heckler*, 573 F.Supp. 1573, 1575 n. 1 (N.D.W.Va.1983). In 1980, the Secretary abandoned use of the medical improvement standard and adopted the "current disability standard." *Id.* at 1579. This approach allows benefits to be terminated *without* comparing the claimant's condition at the time of the original application for benefits with his or her condition at the time of termination; thus, "disability ends when current evidence shows that the individual is able to engage in SGA [substantial gainful activity] regardless of whether actual improvement can be demonstrated." 45 Fed.Reg. 55,583 (1980), *cited in Gra-*

*ham v. Heckler, supra,* 573 F.Supp. at 1579.

This change in the standard applicable in benefits termination cases has required several courts to consider the propriety of the current disability standard. In reviewing cases raising the burden of proof issue, several courts have ruled that the Secretary should follow the medical improvement standard. These courts have held that once a claimant has initially demonstrated disability as defined in the Act, there is a presumption that his disability continues. Therefore, in termination proceedings, the Secretary has the burden of proving that a claimant's medical impairment has improved to the extent that he is no longer disabled. *See Edwards v. Secretary of Health, Education and Welfare,* 572 F.Supp. 1235, 1239, 1240 (E.D.N.Y. 1983) (Weinstein, C.J.); *see also Perry v. Heckler,* 722 F.2d 461, 464 (9th Cir.1983); *Dotson v. Schweiker,* 719 F.2d 80, 82 (4th Cir.1983); *Kuzmin v. Schweiker,* 714 F.2d 1233, 1237–38 (3rd Cir.1983) (Secretary has burden of proof in termination proceedings once claimant has introduced evidence that condition is same as it was at time of initial disability determination); *Simpson v. Schweiker,* 691 F.2d 966, 969 (11th Cir. 1982); *Patti v. Schweiker,* 669 F.2d 582, 586–87 (9th Cir.1982); *Finnegan v. Matthews,* 641 F.2d 1340, 1344–45 (9th Cir. 1981); *Graham v. Heckler, supra,* 573 F.Supp. at 1580; *Leyva v. Harris,* 514 F.Supp. 1313, 1315 (S.D.N.Y.1981) (Weinfeld, J.); *Timblin v. Harris,* 498 F.Supp. 1107 (W.D.Pa.1980). *Cf. Crosby v. Schweiker,* 650 F.2d 777, 778 (5th Cir.1981); *Magee v. Califano,* 494 F.Supp. 162, 166 (N.D.N.Y.1980).[2]

This Circuit has not yet decided the burden of proof issue, holding that:

What sort of record will meet the "substantial evidence" test in termination cases, whether the Secretary bears some burden of producing evidence of medical improvement after a beneficiary has presented evidence that the medical condition underlying the prior determination has continued, ... and whether a burden of persuasion remains with the beneficiary are issues that were not presented and not decided on this appeal ... Our Court has adverted to those questions, ... but not resolved them. They remain for another day.

*Wheeler v. Heckler,* 724 F.2d 262 at 263 (2d Cir.1983) (citations omitted).

■ I am persuaded by the reasoning of the numerous courts cited above that in termination cases, the Secretary is required by law to demonstrate medical improvement of the claimant such that he can engage in substantial gainful activity. This approach both comports with the language of the cessation regulation governing termination cases,[3] and the well-settled rule utilized in initial denial cases where, once the plaintiff has established disability, the Secretary has the burden of proving that there is substantial gainful activity in which the claimant can engage. *See, e.g., Bastien v. Califano,* 572 F.2d 908, 911 (2nd Cir.1978); *Franklin v. Secretary of Health, Education and Welfare,* 393 F.2d 640, 642 (2nd Cir.1968).

■ In the instant case I find that the Secretary has not met its burden of proving that plaintiff can perform sedentary work. The ALJ relied heavily upon the opinions of Drs. Sarwal and Scott and the vocational expert. He discounted the report of Dr. Maurillo and plaintiff's allega-

---

**2.** Notwithstanding the determinations of several courts directing that the medical improvement standard be applied in termination cases, the Secretary has adhered to a policy of "non-acquiescence" to such decisions. *See generally Lopez v. Heckler,* 713 F.2d 1432 (9th Cir.1983), *stayed in part, Mackler v. Lopez,* —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983), *later op.,* 725 F.2d 1489, (9th Cir.1984). The Supreme Court has indicated that at present, "there does not appear to be any significant circuit conflict" on the

burden of proof issue. 104 S.Ct. at 12; *Edwards v. Secretary, supra,* 572 F.Supp. at 1239.

**3.** 20 C.F.R. § 404.1594(a) provides in relevant part:

When the medical or other evidence in your file shows that your *disability has ended,* we will contact you and tell you that the evidence in your file shows that you are able to do substantial gainful activity. . . .

(emphasis added).

tions of pain. As discussed above, I have found that the ALJ misinterpreted Dr. Sarwal's report and apparently was not aware of Dr. Maurillo's clinical findings. He further relied on the vocational expert's opinion that plaintiff could perform the sedentary work of electrical assembler without establishing by substantial evidence that plaintiff could, in fact, perform sedentary work.[4]

There is some evidence in the record, however, that plaintiff may be able to perform sedentary work. Dr. Scott reports that plaintiff can do so, and a treating physician, Dr. Dunbar, suggests that plaintiff be retrained for sedentary work. For this reason, I remand this action to the Secretary, *cf. Carroll v. Secretary*, 705 F.2d 638, 644 (2nd Cir.1983), so that the ALJ may properly interpret and resolve conflicts in the medical evidence and make a finding as to whether plaintiff is capable of performing sedentary work.

*Conclusion*

For the reasons discussed above, the government's motion for judgment on the pleadings is denied. This action is remanded to the ALJ for a new hearing to take place within 120 days of the date of this order.

SO ORDERED.

---

4. While the testimony of a vocational expert is often relied upon in administrative hearings for the purpose of ascertaining types of employment in which the claimant can engage, that assessment must be based on findings based on substantial medical evidence. In the instant case, the ALJ posed a hypothetical question to the vocational expert which asked in part:

> [Claimant had] been left with certain physical limitations which I want you to assume for the sake of this question limit him to work which will involve lifting no more than 10 lbs. at a time and usually lifting less weight, on a regular basis. It would involve lifting or carrying articles like dockets, files, ledgers, or small tools. Basically, *assume also that he can sit most of the time during the work day but requires the opportunity to change his sitting position and occasionally stand.*

Tr. 48–49 (emphasis added). The ALJ further stated: "I am essentially assuming that [claimant] can perform sedentary work...." Tr. 49. In his decision, the ALJ stated:

> [Claimant] is exertionally capable of performing sedentary work .... Based upon this factor, *and the testimony of the vocational consultant that claimant had transferable skills which he could utilize to perform the sedentary, semi-skilled job of electrical assembler,* it must be found that claimant is not unable to perform any substantial gainful activity.

Tr. 17 (emphasis added). A similar situation was presented to the district court in *Buzzeo v. Harris,* 486 F.Supp. 690 (S.D.N.Y.1980), wherein the ALJ also asked the vocational expert to assume "a finding that plaintiff was capable of performing sedentary labor subject to specified restrictions—an assumption of the ultimate fact to be established." *Id.* at 693. In that case, Judge Weinfeld determined:

> [T]he expert's testimony is not probative of whether plaintiff in fact possessed such capacity .... In any event, a vocational expert's opinion that a claimant can engage in sedentary employment provides substantial evidence to deny a claim only if there is sufficient medical evidence to support a finding that the claimant possesses the residual physical capacity to do so .... In short, the vocational expert's testimony, based upon an assumption of the very fact to be established, is insufficient to support the ALJ's finding.

*Id.* at 693–94. *See Spicer v. Califano,* 461 F.Supp. 40, 47 (N.D.N.Y.1978) (see citations therein). *See also Neumerski v. Califano,* 513 F.Supp. 1011, 1015 (E.D.Pa.1981); *Chico v. Harris,* 482 F.Supp. 1234, 1236–37 (E.D.Wis.1980). In the present case, therefore, the ALJ should not have relied upon Mr. Oliver's assessment that plaintiff could perform work as an electrical assembler in the absence of substantial medical evidence that he could perform sedentary work.