**Leon SMITH and Jane Doe, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,**

**David B. Owen, Clarence H. Hollis, Eleanor Pope and Maynard Nunn, Plaintiffs-Intervenors-Appellants,**

**v.**

**Richard S. SCHWEIKER, in his official capacity as Secretary of Health and Human Services and Theodore Allen, in his official capacity as Director of the Vermont Disability Determination Services, Defendants-Appellees.**

No. 864, Docket 82–6272.

United States Court of Appeals,
Second Circuit.

Argued Feb. 24, 1983.

Decided June 1, 1983.

Wendy Morgan, Vermont Legal Aid, Inc., St. Johnsbury, Vt. (John Hasen, Vermont Legal Aid, Inc., Burlington, Vt., John P. Wesley, Vermont Legal Aid, Inc., Springfield, Vt., of counsel) for plaintiffs-appellants.

Nicholas S. Zeppos, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Dept. of Justice, William Kanter, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., George W.F. Cook, U.S. Atty., D. Vt., Rutland, Vt., of counsel) for defendants-appellees Secretary of Health and Human Services.

Before PIERCE, WINTER and PRATT, Circuit Judges.

WINTER, Circuit Judge:

This is an appeal from a dismissal of a class action challenging Vermont's method of terminating disability benefits previously awarded under either Titles II or XVI of the Social Security Act, as approved by the Secretary of Health and Human Services (Secretary). 42 U.S.C. §§ 401–431 (1976 and Supp. IV 1980); 42 U.S.C. §§ 1381–1383 (1976 and Supp. IV 1980). Because the federal courts have no jurisdiction over plaintiffs' claim, we affirm Judge Holden's order dismissing the suit.

BACKGROUND

The plaintiffs here include two named persons who initiated this action, five named intervening plaintiffs and a certified class. All of the named individuals had their disability benefits terminated but successfully pursued the available appeal process and are now classified as "currently disabled." They are thus presently receiving disability benefits. As certified, the class consists of "all present and future Vermont residents who were found eligible for Title II or Title XVI benefits by an Administrative Law Judge, the Appeals Council or a federal court and who received notice on or after June 1, 1979 that those benefits would terminate as a result of review by the Disability Determination Services."

The action was brought to challenge a portion of the test of "current disability" presently utilized by the Secretary and to require that "medical improvement" of a recipient's condition be proven before a termination of benefits. Under Titles II and XVI of the Social Security Act, an individual is disabled and thus eligible for benefits when he or she is unable

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). To prove disability, an individual must establish that he or she suffers from a "physical or mental impairment" so severe that

he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

To continue to receive benefits, a recipient must be able to demonstrate that he or she is "currently disabled." The standard applied by the Secretary in determining continued eligibility takes a variety of circumstances into account such as age, available work in the economy, and medical condition. Plaintiffs claim that such an overall review of the claimant's capacities is not permissible and that specific evidence of "medical improvement" is necessary before a recipient may be terminated.

Disability determinations are governed by procedures coordinated by the state and federal governments. In Vermont, claims are initially referred to the state Disability Determination Services (DDS) for review. If the claim is denied, a claimant may request reconsideration by DDS, and, if that is denied, a full hearing before an Administrative Law Judge (ALJ). 42 U.S.C. § 421(d); 20 C.F.R. §§ 404.930, 416.1429 (1982). The claimant may seek yet a fourth review of an adverse decision before the Social Security Administration's Appeals Council, 20 C.F.R. §§ 404.967, 416.1467 (1982), and, thereafter, a claimant may pursue his remedies in the federal courts. 42 U.S.C. § 405(g).

A favorable decision at any stage entitles the claimant to benefits. However, eligibility continues only so long as the disability exists, 20 C.F.R. §§ 404.1590, 416.990 (1982), and each successful claimant's case is subject to a "continuing disability investigation" (CDI). The CDI was at one time a random process but now mandatory as to each recipient unless specifically waived by the Secretary. 42 U.S.C. § 421(i) (Supp. IV 1980). Each successful claimant's case is reviewed at least once every three years "for purposes of continuing eligibility." Id. Benefits may be terminated "if the medical or other evidence shows that [the claimant] is not disabled or if there is not enough evidence to support a finding that disability continues." 20 C.F.R. §§ 404.1590, 416.990. The Secretary has interpreted this regulation to mean that a beneficiary may be terminated if the agency reviews the record and is satisfied under all the circumstances that evidence in addition to that relied upon in the initial determination demonstrates the claimant is not currently disabled. Plaintiffs claim that termination is not permissible without specific evidence of the individual recipient's medical improvement.

The review process for initial determinations also applies to determinations of continuing eligibility. Prior to the 1983 Amendments to the Social Security Act, benefits were suspended after the initial decision to terminate and could be recouped only by appeal. Now, however, terminated claimants have an option of continuing benefits until an ALJ reviews the state agency's termination decision and affirms it. If the ALJ affirms, this opens the claimant to repayment proceedings at the discretion of the Secretary.

## DISCUSSION

■ Judge Holden dismissed plaintiffs' claim on the merits. We affirm on the ground of lack of jurisdiction because neither the named individuals nor the certified class have had their benefits terminated and exhausted the available review procedures.

■ The district court properly rejected jurisdictional claims as to the federal defendants based on federal question jurisdiction, 28 U.S.C. § 1331 (1976), or on mandamus jurisdiction, 28 U.S.C. § 1361 (1976), and as to the state defendants based on a civil rights claim under 28 U.S.C. § 1343 (1976). Federal question jurisdiction has been specifically foreclosed for claims brought under Title II of the Act, see 42 U.S.C. § 405(h), and this exclusion has been implicitly incorporated into Title XVI, see 42 U.S.C. § 1383(c)(3). See generally Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Mandamus jurisdiction does not lie where the claims are not against the Secretary for failure to comply but rather are directed at the propriety of the regulations themselves. White v. Mathews, 559 F.2d 852, 856 (2d Cir.1977) cert. denied sub nom. Califano v. White, 435 U.S.

908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Finally, jurisdiction cannot be predicated on 28 U.S.C. § 1343 [1] because the Social Security Act is not legislation which secures "equal rights," *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), and because the state defendant's allegedly illegal acts were unquestionably taken pursuant to federal, not state, law. *Smith v. United States Civil Service Commission,* 520 F.2d 731, 733 (7th Cir.1975); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 456 F.2d 1339, 1346 (2d Cir.1972); *Stenson v. Finch,* 317 F.Supp. 581, 585 (N.D.Ga. 1970). *Compare Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (claim that state interpretation of federal law is invalid satisfies "under color of state law" requirement).

The district court concluded, however, that jurisdiction flowed from Title II of the Act, 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Secretary made after a hearing to which he was a party, ... may obtain a review of such decision by a civil action." While Section 405(g) embodies an explicit exhaustion requirement, that requirement has been held to contain what has been called a non-waivable and a waivable element. *Mathews v. Eldridge,* 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1975). Thus, as to the non-waivable element, Section 405(g) does not confer jurisdiction where a claimant has presented no claim whatsoever to the Secretary. On the other hand, the Secretary may waive, or be said by a court to have waived, the requirement that a claimant must fully exhaust his administrative remedies before obtaining judicial review. *Mathews v. Eldridge, supra; Mercer et al. v. Birchman and Schweiker,* 700 F.2d 828, 831 (2d Cir.1983). Because the named individuals are not presently terminated and the class as certified is not

purported to have exhausted the available review procedures, it is this latter, so-called waivable, element which is at issue.

■ A waiver of the exhaustion requirement may be inferred where the plaintiffs' legal claims are collateral to their demand for benefits, where exhaustion would be a *pro forma* or futile gesture, or where the harm suffered in the interim would be irreparable in the sense that no *post hoc* relief would be adequate. *Mathews v. Eldridge* 424 U.S. at 330–331, 96 S.Ct. at 900.

The claims raised in this action are hardly collateral to the demand for benefits. Unlike Eldridge, who was asserting a right to a particular kind of procedure to which he was not entitled under the Secretary's regulations, the plaintiffs here claim only that, depending on the evidence adduced, an illegal termination of their benefits may result from the application of the Secretary's test for current disability. Thus, no viable claim of futility can be made since the facts developed in the hearing may result in a restoration of eligibility status or in a termination for reasons not at issue here. Indeed, the former result has occurred in the case of every named plaintiff and intervenor. In this context we are utterly at a loss to understand plaintiffs' argument that appropriate relief is not available through exhaustion.

Exhaustion, moreover, would frame the issue in a much clearer fashion than is possible when it is posed as an abstraction. While the legal issue raised by plaintiffs may seem well-defined to them, it seems rather unformulated to us. What is meant by evidence of medical improvement, for example, is somewhat ambiguous. If disability status has been previously determined on the grounds of paralysis from the neck down, a video tape of the claimant playing football might well seem sufficient evidence to terminate benefits. Yet plain-

---

1.  28 U.S.C. § 1343 provides in pertinent part: The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: ...
    (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States....

tiffs seem at times to be arguing that unless the claimant's health has improved, *i.e.* the paralysis has disappeared rather than having been initially misdiagnosed, a termination of benefits is unlawful however conclusive the evidence of no present disability. At other times they seem to require medical testimony as essential to termination. It is also not clear why, if the initial disability determination was based on a finding of a lack of suitable jobs in the economy, evidence of medical improvement is necessary where a different finding as to the availability of such jobs based on new evidence is made. We note this, not to comment on the merits, but to suggest that the claim raised by plaintiffs may seem far stronger, and certainly more clearly framed, when urged in the context of a concrete case, developed in the review process, with a factual record setting out the reasons for the prior ruling and subsequent termination, than when posed in the abstract.

Finally, the harm visited upon the claimants is not irreparable. The named plaintiffs and intervenors currently are receiving benefits and are eligible to make claims for past losses. Future claimants in the class are entitled under the 1983 amendments to continue benefits pending the outcome of the appeal, subject to recoupment.

The district court relied on our decision in *Jones v. Califano*, 576 F.2d 12 (2d Cir.1978) in holding that the *Eldridge* test for constructive waiver had been met. We believe *Jones* is readily distinguishable. At issue in *Jones* was the Secretary's continued adherence to a legal standard which had been repeatedly rejected by the Appeals Council. Claimants faced by a routine denial by the Secretary were thus forced to take claims to the Appeals Council which in turn would routinely reverse. Under these circumstances, concededly "needy" individuals for whom "time is a precious commodity" might obtain the higher level of benefits only by prosecuting their claims three rungs up the administrative ladder to the Appeals Council. *Id.* at 20. While they were ultimately successful, that very success prevented them from obtaining judicial review of the standard initially applied by the Sec-

retary. Thus, the harm suffered, "the evasion of review," and "the at least colorable constitutional violations of due process and equal protection," *id.* at 21, persuaded the court to "assimilate the posture of the claimant Jones ... to the posture of the claimant Eldridge," *id.*

Unlike *Jones,* there is no internal disarray within the Social Security Administration in the present case. Here we face a claim that termination of some recipients may occur in the absence of evidence said by the plaintiffs to be legally essential. There exists no irreparable harm, no potential evasion of review and no colorable constitutional claim.

We affirm for lack of jurisdiction. While this disposes of the case, we again "add a word on the class certification." *Mercer et al. v. Birchman and Schweiker,* at 835. Although the complaint attacks termination decisions reached in the absence of evidence of medical improvement, the class includes all recipients who received a notice of termination after June, 1979, including persons for whom there was evidence of medical improvement, persons who were terminated on other grounds irrelevant to this case and persons who have since been reinstated. For all we can tell, the vast preponderance of the class certified is simply not affected by the legal issue plaintiffs seek to raise. As in *Mercer, id.,* therefore, "[w]e do not see how the court could have found that a class so ... defined met the requirements of F.R.Civ.P. 23(a)(2), (3) and (4)." We again express our confusion as to "what effect a judgment ... could have on entirely different claims of other persons ... or what benefit a successful defendant could draw from it." *Id.*

Affirmed.