717 F.2d 813
 3 Soc.Sec.Rep.Ser. 28
 Frank KUEHNER, Dorothy Burayak, Richard Burns, Alice
Hetherington, Frank Jennings, Jr., Philip Fisher, Clinton
Royal, Solomon Katz, Raymond Staniewicz, James N. McKeown,
James Loughlin, Margaret Douglas, Lawrence Cook, Steven
Sverdlow, Elaine Fleigelman and Riva Yanovskaya, on behalf
of themselves and all others similarly situated, James
McKeown and Riva Yanovskaya, on behalf of themselves and all
others similarly situated, Appellants,
v.
Richard SCHWEIKER, Secretary, U.S. Department of Health and
Human Services, John A. Svahn, Commissioner, Social Security
Administration, Barry Stern, Secretary, Pa. Dept. of Labor &
Industry, John Delpaine, Director, Pa. Disability
Determination Bureau.
 No. 82-1514.
 United States Court of Appeals,
Third Circuit.
 Argued June 1, 1983.
Decided Sept. 19, 1983.
Rehearing and Rehearing En Banc Denied Nov. 28, 1983.
 
 Jonathan M. Stein (argued), James M. Lafferty, Richard P. Weishaupt, Community Legal Services, Inc., Philadelphia, Pa., for appellants.
 J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Peter F. Vaira, Jr., U.S. Atty., Philadelphia, Pa., William Kanter, Nicholas S. Zeppos (argued), Attorneys, Appellate Staff, Civil Div., Washington, D.C., for appellee.
 Before GIBBONS and BECKER, Circuit Judges, and WEBER, District Judge.*OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 The plaintiffs, former recipients of Social Security disability benefits, appeal from an order dismissing their class action complaint for lack of subject matter jurisdiction. The defendants are Richard Schweiker, Secretary of Health and Human Services, John A. Svahn, Commissioner, Social Security Administration (the federal defendants), Barry Stern, Secretary, Pennsylvania Department of Labor and Industry, and John Delpaine, Director, Pennsylvania Disability Determination Bureau (the state defendants). The defendants administer Titles II and XV of the Social Security Act. 42 U.S.C. Sec. 401 et seq. (Supp. V 1981). The complaint challenges methods employed by the defendants in determining that disability payments should be terminated. In that process the state defendants participate on behalf of the Social Security Administration, and their actions are subject to review by that Administration. We hold that the trial court, 547 F.Supp. 49, erred in dismissing the complaint for lack of jurisdiction, and we reverse.
 
 
 2
 * Each of the sixteen named plaintiffs is a former recipient of disability benefits who has been notified that those benefits have been or are about to be terminated, and each has presented a claim to a state or federal agency for continued benefits. The complaint alleges that, motivated by the goal of reducing disability benefits payments for the fiscal year 1982 and thereafter, the federal defendants adopted policies, implemented by the state defendants, which have resulted in high volume review of continued eligibility. It alleges further that the high volume review process has or will soon affect over 250,000 class members in Pennsylvania who have previously properly been determined to be eligible for such benefits. It alleges, moreover, that the high volume review process which the defendants have implemented (1) fails to ascertain whether there has been any substantial medical improvement in the disabled person's disabling condition, (2) fails to give any presumptive effect to the prior disability determination, (3) results in cessation of disability benefits despite lack of medical evidence in the record justifying that action, (4) ignores or fails to weigh treating physician evidence, and (5) ignores vocational factors, the effects of combined impairments, and the effects of disabling pain. These defects are alleged to be fixed policies applicable to all disability benefit recipients. The complaint alleges, further, that many of the class members suffer from mental illness or disabilities which make it unlikely that they will appreciate the steps which they may have to take to obtain review of initial termination decisions, that many others will be subject to medical risk by the termination of treatment resulting from termination of medicare benefits, and that most class members rely on their disability payments for the necessities of life. These and similar allegations are relied upon as likely to cause immediate and irreparable harm. The complaint charges that the high volume review process involving the five deficiencies alleged is illegal in several respects. These fixed policies are said to violate the Social Security Act, as interpreted by this court, and to deprive class members of benefits to which they are entitled without due process of law. For purposes of a Rule 12(b)(1) motion we must assume that the factual allegations are true.
 
 
 3
 For relief the plaintiffs seek a declaratory judgment that defendants are erroneously and illegally terminating or threatening to terminate class members receipt of disability benefits by failing:
 
 
 4
 a. to determine whether substantial medical improvement has occurred;
 
 
 5
 b. to allow presumptive effect to prior determinations of disability;
 
 
 6
 c. to develop fully and to accord appropriate weight to evidence from treating physicians; and
 
 
 7
 d. to follow a proper sequential disability evaluation process, including consideration of medical evidence, combination of impairments, pain, and residual functional capacity.
 
 
 8
 Injunctive relief against such illegality is sought as well.
 
 II
 
 9
 The Social Security Administration does not before this court contend that the fixed policies alleged in the complaint are consistent with interpretations of the Social Security Act made by this court and others. Indeed at oral argument the Justice Department attorney appearing for the defendants conceded that the Social Security Administration pursues, with respect to certain rulings by courts of appeals, a policy of nonacquiescence. The Social Security Administration has, for example, adopted such a policy with respect to an April 16, 1981 decision of the United States Court of Appeals for the Ninth Circuit holding that disability benefits could not be terminated unless it showed that there was a material improvement in the claimant's medical condition. Memorandum of February 23, 1982 From Associate Commissioner Office of Hearings and Appeals to all Components of the Social Security Administration App. at 43a. The Social Security Administration does contend that by virtue of 42 U.S.C. Sec. 405(h) (1976) the district court lacks subject matter jurisdiction to consider its policies either in a suit against the federal defendants or in a suit against the state defendants. And, implicitly at least, the defendants contend that 42 U.S.C. Sec. 405(g) (1976) controls even with respect to challenges to fixed agency policies which violate due process.
 
 III
 
 10
 The district court held that it lacked subject matter jurisdiction to entertain the complaint against either the state or the federal defendants.
 
 A. The State Defendants
 
 11
 The complaint alleges jurisdiction over the state defendants by virtue of 28 U.S.C. Sec. 1343(a)(3) (Supp. V 1981) because of constitutional violations. The court ruled that because the state defendants were administering a federal program they were acting under color of federal law, and thus that there was no jurisdiction under that statute. The court's observation is arguably correct, but irrelevant. Reading the complaint as charging that state officers, acting under color of federal law, deprived the class members of property interests to which the Social Security Act entitled them, either in violation of the due process clause or in violation of the Social Security Act, states a claim arising under the Constitution or laws of the United States. As the trial court construed the complaint against the state officers, therefore, there was jurisdiction to consider it without regard to jurisdictional amount. 28 U.S.C. Sec. 1331 (Supp. V 1981). Moreover, Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), holding that 42 U.S.C. Sec. 405(h) eliminates section 1331 jurisdiction over suits against the Social Security Administration to recover on any claim arising under the Social Security Act, is not controlling. Section 405(h) refers only to actions against "the United States, the Secretary, or any officer or employee thereof." It cannot be construed as a limitation of state court jurisdiction over suits against state officers, or as a limitation of the general jurisdictional grant in section 1331 except as specified.
 
 
 12
 We recognize that the jurisdictional reference in the complaint, while mentioning section 1331, relied specifically on 28 U.S.C. Sec. 1343 (Supp. V 1981) for jurisdiction over the state defendants.[1] However, the complaint, as construed by the district court, alleges claims against state officers arising under the Constitution and laws of the United States, and we are instructed by 28 U.S.C. Sec. 1653 (1976) that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." The Justice Department is appearing for all defendants, and we can conceive of no prejudice to the state defendants from looking to the allegations of the complaint in order to determine subject matter jurisdiction. See Ellis v. Blum, 643 F.2d 68, 75-76 (2d Cir.1981) (section 1331 provides basis for jurisdiction over state defendants in Social Security Act litigation even though not pleaded).
 
 
 13
 Thus we hold that the court erred in holding that it lacked subject matter jurisdiction over the suit against the state defendants. Whether the complaint states a claim against them upon which declaratory and injunctive relief may be granted against them in the absence of the federal defendants is a separate question. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). It is not a question we need address on this appeal, however, for as indicated below the federal defendants were properly joined in the district court.
 
 B. The Federal Defendants
 
 14
 For subject matter jurisdiction as to the federal defendants the complaint relied upon 42 U.S.C. Secs. 405(g) and 1383(c), on 28 U.S.C. Sec. 1361, and on 28 U.S.C. Sec. 1331. The district court rejected each basis of jurisdiction. We consider them separately.
 
 42 U.S.C. Secs. 405(g) and 1383(c)
 
 15
 Section 405(g) provides for judicial review of decisions of the Secretary made after a hearing, in a civil action in a United States District Court. The trial court held that each named plaintiff and each class member must finally exhaust all administrative remedies before a complaint on his behalf for judicial review could be entertained. In so ruling the court failed to take into account this court's decision in Liberty Alliance of the Blind v. Califano, 568 F.2d 333 (3d Cir.1977). In that case we held that section 405(g) permitted class actions on behalf of Supplemental Security Income recipients whose benefits have been reduced or terminated. We wrote:
 
 
 16
 In order for a district court properly to entertain an action under Sec. 405(g), two conditions must be satisfied. First, a claim for benefits must have been presented to the Secretary. Second, there must have been a final decision after a hearing. The Supreme Court has held, however, that only the first condition is a mandatory requirement. The second--the requirement that the claimant exhaust his administrative remedies--can be waived either by the Secretary, Mathews v. Diaz, 426 U.S. 67, 76, 96 S.Ct. 1883 [1889] 48 L.Ed.2d 478 (1976), or, under certain circumstances, by the court on its own determination, Mathews v. Eldridge, 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976).
 
 
 17
 568 F.2d at 344. We held that the plaintiffs in Liberty Alliance had met the first, non-waivable condition, because all the claimants were benefit recipients whose benefits had been reduced or terminated. Id. That holding is controlling in this case with respect to the first, non-waivable condition, for the plaintiffs and the class they seek to represent are identically situated.
 
 
 18
 Liberty Alliance also addressed the Social Security Administration's contention that the holding in Mathews v. Eldridge, 424 U.S. 319, 328 [96 S.Ct. 893, 899, 47 L.Ed.2d 18] (1976), was limited to challenges to agency action on constitutional grounds. We wrote:
 
 
 19
 [Weinberger v.] Salfi [422 U.S. 749 [95 S.Ct. 2457, 45 L.Ed.2d 522] (1975) ] teaches us that if the legal issue is constitutional, since the administrative agency cannot decide that issue, no exhaustion is required. 422 U.S. at 765, 95 S.Ct. 2457.... Where the legal issue is statutory, however, the agency does have authority to decide it, subject of course to judicial review. The test for exhaustion of a statutory issue in an individual case, we believe, should be whether the Secretary has taken a final position on that issue. In the class context the test should be no different.
 
 
 20
 568 F.2d at 345-46. Thus Liberty Alliance settles two points. There is no Sec. 405(g) exhaustion requirement for constitutional issues, and for statutory issues the court may waive exhaustion if the Secretary has taken a final position on them.
 
 
 21
 Here the plaintiffs present both constitutional and statutory issues. Moreover the complaint alleges, and at this stage we must accept the allegation as true, that the challenged policies represent fixed positions of the Social Security Administration. Thus the complaint falls squarely within the Liberty Alliance holding.
 
 
 22
 While the trial court simply ignored Liberty Alliance, the Justice Department brief attempts to distinguish it on the ground that with respect to one named plaintiff, Mrs. Carney, the claim had been exhausted at the highest administrative level. Appellee's Brief at 25. The reference, however, to a single exhausted claim, is taken entirely out of context. The Liberty Alliance opinion points to the Secretary's decision in Mrs. Carney's case, not as satisfying the exhaustion requirement for the entire class, but as evidence of the fact that the Secretary had taken a final position on the legal issue. Fairly read, the complaint alleges that the Social Security Administration's position on the challenged procedures is final. The government has filed no affidavit to the contrary. The nonacquiescence memorandum of February 23, 1982 referred to above suggests rather strongly that the plaintiffs will be able to prove the allegation. But in any event, for purposes of this Fed.R.Civ.P. 12(b)(1) ruling the allegation in the complaint controls and puts the case squarely within Liberty Alliance.
 
 
 23
 Although the Justice Department brief makes the rather lame attempt to distinguish Liberty Alliance referred to above, its real thrust is that the Secretary does not acquiesce in that holding. The Brief urges that Mathews v. Eldridge permits judicial waiver of exhaustion only with respect to constitutional issues which are "entirely collateral" to individual claims. Essentially the same argument was rejected by this court in Liberty Alliance, and for good reasons. There we noted:
 
 
 24
 The sensible construction of Sec. 405(g) in Salfi, Eldridge, and Diaz accommodates the sometimes competing needs of the administrative process for time to arrive at a mature judgment on often complex legal issues, of the judicial process for avoidance of multiple applications for judicial review, and of similarly situated benefit applicants for the avoidance of futile administrative delays in the determination of their benefits.
 
 
 25
 568 F.2d at 346. Each of the policy considerations adverted to in the quoted passage from Liberty Alliance is fully applicable here. Indeed, if the allegations of the instant complaint are proved, the policy arguments in favor of classwide relief are even stronger, for the plaintiffs in effect charge that the Social Security Administration has for budgetary reasons instructed those responsible for termination adjudications to disregard definitive interpretations of the Act made by the courts.
 
 
 26
 In any event, while the Secretary may feel free to express nonacquiescence in Liberty Alliance or any other construction of the Social Security Act announced by this court, the rules under which we operate do not afford any such leeway.[2] This panel is, and the district court was, bound by Liberty Alliance unless the court in banc should choose to overrule it. Since Liberty Alliance was followed in Mattern v. Mathews, 582 F.2d 248, 249, 252-53 (3d Cir.1978), cert. denied, 443 U.S. 912, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979), and in Town Court Nursing Center v. Beal, 586 F.2d 266, 275 (3d Cir.1978) (in banc), an in banc overruling seems unlikely. The fact that other federal courts have followed the Liberty Alliance section 405(g) interpretation suggests a broad consensus. See Wright v. Califano, 587 F.2d 345, 349 (7th Cir.1978); Jones v. Califano, 576 F.2d 12, 19 (2d Cir.1978); Caswell v. Califano, 583 F.2d 9, 13 (1st Cir.1978); Kennedy v. Harris, 87 F.R.D. 372, 375 (S.D.Cal.1980); Adams v. Califano, 474 F.Supp. 974, 982 (D.Md.1979); Fitzgerald v. Schweiker, 538 F.Supp. 992, 997-98 (D.Md.1982).
 
 
 27
 Thus we hold that the trial court erred when it disregarded the controlling Liberty Alliance precedent and dismissed the complaint for lack of subject matter jurisdiction.
 
 28 U.S.C. Sec. 1361
 
 28
 In the district court the plaintiffs also asserted jurisdiction under the federal mandamus statute, 28 U.S.C. Sec. 1361 (1976). The trial court, although citing in another context Judge Friendly's opinion in Ellis v. Blum, 643 F.2d 68 (2d Cir.1981), summarily rejected that basis for jurisdiction. In Ellis v. Blum, like this a challenge to an administrative action by the Social Security Administration, Judge Friendly carefully analyzes the scope of district court jurisdiction under 28 U.S.C. Sec. 1361 to afford class-wide relief with respect to defective procedures. He holds that 42 U.S.C. Sec. 405(h) does not affect the district court's jurisdiction under section 1361. 643 F.2d at 82. We need not repeat here Judge Friendly's typically thorough and careful analysis. We only note that the Ellis v. Blum holding was anticipated in this court by our holding in Mattern v. Weinberger, 519 F.2d 150, 156-57 (3d Cir.1975), vacated and remanded on other grounds, Mathews v. Mattern, 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 (1976), that 28 U.S.C. Sec. 1361 affords jurisdiction in a class action challenging the validity of recoupment procedures adopted by the Social Security Administration for the recovery of overpayments.
 
 
 29
 Thus the trial court erred as well in disregarding the Mattern v. Weinberger precedent and refusing to entertain the plaintiff's action under 28 U.S.C. Sec. 1361.
 
 Sec. 1331
 
 30
 Since we have already identified two separate statutes affording subject matter jurisdiction over plaintiffs' lawsuit against the federal defendants, there is no need to address the question whether, despite 42 U.S.C. Sec. 405(h), 28 U.S.C. Sec. 1331 provides subject matter jurisdiction for declaratory and injunctive relief with respect to procedures as distinguished from collection of benefits. But see St. Louis University Hospital v. Blue Cross Hospital Services, 537 F.2d 283, 291-92 (8th Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976).
 
 IV
 
 31
 Since there was subject matter jurisdiction over the claim against the state defendants under 28 U.S.C. Sec. 1331 and subject matter jurisdiction over the federal defendants both under 42 U.S.C. Sec. 405(g) and under 28 U.S.C. Sec. 1361, the judgment dismissing the complaint for lack of subject matter jurisdiction will be reversed.
 
 
 32
 EDWARD R. BECKER, Circuit Judge, concurring.
 
 
 33
 While I agree that there was subject-matter jurisdiction over the federal and state defendants in this case and that the judgment dismissing the complaint for lack of subject-matter jurisdiction must be vacated and the case remanded for further proceedings, I disagree with the majority's approach and reach my conclusion on different grounds. I will consider the issues in the order set forth by the majority.
 
 I. Jurisdiction over the State Defendants
 
 34
 The majority concludes that subject-matter jurisdiction over the state defendants lies under 28 U.S.C. Sec. 1331 (Supp. IV 1980) notwithstanding Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), in which the Supreme Court read 42 U.S.C. Sec. 405(h) (1976)[1] as eliminating section-1331 jurisdiction over suits against the Social Security Administration to recover on any claim arising under the Social Security Act. Id. at 756-62, 95 S.Ct. at 2462-65. The majority purports to distinguish Salfi by observing that
 
 
 35
 [s]ection 405(h) refers only to actions against the United States, the Secretary, or any officer or employee thereof. It cannot be construed as a limitation of state court jurisdiction over suits against state officers, or as a limitation of the general jurisdictional grant in section 1331 except as specified.
 
 
 36
 Majority op. at Part III.A. Because section 405(h) does not expressly preclude resort to section 1331 in suits against state defendants such as the Secretary of the Pennsylvania Department of Labor and Industry and the Director of the Pennsylvania Disability Determination Bureau, the majority concludes that Salfi simply "is not controlling," id.
 
 
 37
 I believe that the majority has read the Supreme Court's opinion too narrowly. It is true, of course, that section 405(h) does not expressly bar section-1331 jurisdiction over the state defendants, but the majority glosses over the fact that the state defendants are merely the alter egos of the federal defendants, who clearly fall within the ban of section 405(h). As Judge Friendly observed in Ellis v. Blum, 643 F.2d 68, 76 (2d Cir.1981), a case cited by the majority:
 
 
 38
 On its face Sec. 405(h)'s ban on actions "against the United States, the Secretary, or any officer or employee thereof" does not apply to a suit against state officials. However, a forceful argument can be made that the state officials administering the disability-benefits program are acting under color of federal law as mere agents of the Secretary, and as such are within the ambit of Sec. 405(h). To hold otherwise arguably would invite applicants for Title II benefits to circumvent Secs. 405(g) and (h) by bringing suit under Sec. 1331 against the state officials instead of the Secretary, particularly now that the amount-in-controversy requirement of Sec. 1331 has been eliminated as to all defendants.
 
 
 39
 I agree with this view and therefore conclude that plaintiffs cannot invoke section 1331 to gain jurisdiction over the state defendants.[2] I will address later, see infra Part III, the basis upon which I do find jurisdiction over the state defendants.
 
 
 40
 II. Jurisdiction over the Federal Defendants: 42 U.S.C.
 
 Sec. 405(g)
 
 41
 The majority concludes that 42 U.S.C. Sec. 405(g) (Supp. V 1981)[3] provides a proper jurisdictional basis for the claims against the federal defendants despite the fact that none of the named plaintiffs, nor any of the class members, exhausted his or her administrative remedies. The majority bases its decision on Liberty Alliance of the Blind v. Califano, 568 F.2d 333 (3d Cir.1977), which the majority considers "controlling ... precedent," Majority op. at Part III.B.1. Indeed, the majority goes so far as to characterize as "lame" the Secretary's attempt to distinguish Liberty Alliance. Id.
 
 
 42
 I am far less certain that Liberty Alliance controls, for there are two arguable distinctions between that case and the one before us. First, one of the named plaintiffs in Liberty Alliance had exhausted her claims at the highest administrative level, thereby complying with section 405(g)'s mandate that district courts review only "final decision[s] of the Secretary made after a hearing to which [plaintiff] was a party." The case sub judice presents no exhausted claims. Second, the claim at issue in Liberty Alliance related to the way in which benefits were to be calculated[4] and thus was far more collateral to the award or denial of benefits than are the claims now being pursued before this Court.
 
 
 43
 I concede that Liberty Alliance is broadly written; I also note that Judge Gibbons is the author of that opinion as well as of the majority opinion here, and I therefore will not quarrel with his judgment that Liberty Alliance is apposite. I do not, however, agree that Liberty Alliance is itself dispositive of the case now before us. Rather, I believe that our finding of subject-matter jurisdiction over the federal defendants under 42 U.S.C. Sec. 405(g) should be grounded on a restatement of the cardinal principles governing this area of the law as those principles may be synthesized from the decisions of the Supreme Court and this Court, including Liberty Alliance. I therefore will attempt such a restatement and, in so doing, will highlight my differences with Judge Gibbons over the scope of Liberty Alliance. While our differences may be matters of emphasis, I believe that they do have some substantive importance.
 
 
 44
 The foundation of Liberty Alliance, as of other exhaustion cases, is the Supreme Court's opinion in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Eldridge split section 405(g)'s "final decision" requirement into two components,
 
 
 45
 only one of which is purely "jurisdictional" in the sense that it cannot be "waived" by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no "decision" of any type. And some decision by the Secretary is clearly required by the statute.
 
 
 46
 Id. at 328, 96 S.Ct. at 899. We are not concerned here with the "nonwaivable element" of section 405(g), for the complaint clearly alleges that all class members "have presented claims of continuing disability," Complaint at p 9. We therefore need focus only on that aspect of Eldridge that discusses the appropriateness of judicial waiver of the administrative remedies that follow the filing of a claim.
 
 
 47
 Plaintiff in Eldridge was a recipient of Social Security disability benefits; when notified that his benefits were to be terminated, Eldridge did not request reconsideration of the decision but filed suit against the Secretary, claiming that the due-process clause of the fifth amendment to the Constitution requires that a recipient of disability benefits be granted an evidentiary hearing prior to the termination of those benefits.
 
 
 48
 The Supreme Court ruled against Eldridge on the merits but upheld the taking of jurisdiction, recognizing that "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." 424 U.S. at 330, 96 S.Ct. at 900. The Court deemed Eldridge's suit to be such a case because Eldridge had raised a constitutional, rather than a statutory, claim, and because that claim was "entirely collateral to his substantive claim of entitlement." Id. Moreover, the Court recognized the hardship that would befall Eldridge, were it necessary for him to save his contentions for the post-termination administrative-review process. Id. at 331-32, 96 S.Ct. at 900-01.
 
 
 49
 In the course of its opinion, the Court also articulated "the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered," id. at 331 n. 11, 96 S.Ct. 900 n. 11. This principle is especially critical in light of the fact that "[i]t is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context," id. at 330, 96 S.Ct. at 900. The Eldridge approach, therefore, is a pragmatic one, focusing on the nature and collaterality of the asserted claim, including the likelihood that the Secretary would "consider substantial changes in the administrative review system" at the behest of a single claimant, and the harm that would be caused to the would-be plaintiff by relegating him to his administrative remedies.
 
 
 50
 Less than two years later, this Court decided Liberty Alliance, which addressed Eldridge and its predecessor, Weinberger v. Salfi, supra. We there noted the differences between unexhausted constitutional claims (as in Eldridge ) and unexhausted statutory claims, 568 F.2d at 345-46, and observed:
 
 
 51
 Salfi teaches us that if the legal issue is constitutional, since the administrative agency cannot decide that issue, no exhaustion is required.... Where the legal issue is statutory, however, the agency does have authority to decide it, subject of course to judicial review. The test for exhaustion of a statutory issue in an individual case, we believe, should be whether the Secretary has taken a final position on that issue. In the class context the case should be no different.
 
 
 52
 Id. at 346 (citations omitted). The finality of the Secretary's position in Liberty Alliance was evidenced by the Department of Health, Education, and Welfare's ("HEW's") conduct during negotiations with plaintiffs and by a letter from HEW stating that the Secretary would not modify his interpretation of the relevant statutory provision except in response to legislative or judicial action. Id.[5]
 
 
 53
 Liberty Alliance and the majority here seem to focus exclusively on the question whether the Secretary has taken a fixed and final position on the asserted claim. As I read Liberty Alliance, however, this Court did not--and, indeed, could not--read out of the law the collaterality requirement that played so important a role in the Supreme Court's Eldridge opinion. It was unnecessary to dwell on that issue in Liberty Alliance because the plaintiffs' claim in that case, involving the calculation of benefits, see supra note 4, was clearly collateral to any substantive award or denial of those benefits.
 
 
 54
 I therefore conclude, after reviewing Salfi, Eldridge, and Liberty Alliance, that there are three basic criteria that must be met before judicial waiver of section 405(g)'s exhaustion requirement becomes appropriate: (1) the unexhausted claim must be at least substantially collateral to the question whether plaintiffs should continue to receive disability benefits; (2) the Secretary must have taken a fixed and final position on the unexhausted claim, thereby rendering exhaustion futile; and (3) requiring exhaustion must impose substantial hardship on, or cause irreparable harm to, the plaintiffs.[6] It is only because I believe that each of these three criteria has been satisfied that I concur in the majority's waiver of the exhaustion requirement.
 
 A. Collaterality
 
 55
 The defendants have argued that collaterality is absent here because plaintiffs' claims are inextricably intertwined with the merits of each disability-benefits termination decision.[7] It is impossible, defendants argue, to isolate questions relating to the medical-improvement standard, testimony of treating physicians, and "sequential" evaluation from the medical and vocational history of each applicant. Moreover, imposition of a medical-improvement standard might even dictate the outcome of some cases.[8]
 
 
 56
 These are forceful arguments, but the fact remains that, should plaintiffs prevail on each of their claims in this case, the Secretary still will be at liberty to terminate all payments upon finding the recipients no longer disabled. The district court thus would not be ruling on the merits of the underlying claims for benefits but only on the procedures by which such determinations ultimately will be made by the state and federal agencies. I therefore believe that plaintiffs' claims are substantially collateral to the question whether plaintiff should continue to receive disability benefits.
 
 
 57
 B. Final Position and Futility of Exhaustion
 
 
 58
 I also believe that the Secretary has taken a fixed and final position on the questions raised by plaintiffs; judicial waiver of exhaustion requirements thus will not cause "premature interference with agency processes" or deny the agency the chance to "function efficiently," Weinberger v. Salfi, supra, 422 U.S. at 765, 95 S.Ct. at 2457. SSA Ruling 81-6 (1981), for example, sets out the standards to be used in continuing-disability investigations and expressly rejects plaintiffs' medical-improvements claim: "It will not be necessary to determine whether or how much the individual's condition has medically improved since the prior favorable determination." App. at A42. See also Defendants' Response to Request for Admissions--First Set, App. at A59 ("Admit that there is no distinction in the standards of evaluating a claim on initial application or continuing disability review"; "finding of improvement in a claimant's condition is not required under the Secretary's regulations"). And the statement of defendant Barry H. Stern (Secretary of Pennsylvania's Department of Labor and Industry) to the United States Senate's Finance Committee on August 18, 1982, reveals that the Secretary also has taken a fixed position on plaintiffs' sequential-evaluation claim. Mr. Stern testified:
 
 
 59
 SSA [Social Security Administration] now discourages the allowance of claims where an impairment is similar in severity, but not specifically described in the medical listing.
 
 
 60
 Compounding this issue is that SSA no longer considers the combined effect of all impairments of the individual, but rather evaluates each impairment singularly, resulting in many of the multiply disabled being terminated from the disability rolls.
 
 
 61
 App. at A50. These and other indications of the Secretary's views constitute strong evidence that SSA has taken a fixed and final position on the claims at issue and that it therefore would be "unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient...." Mathews v. Eldridge, supra, 424 U.S. at 330, 96 S.Ct. at 900.
 
 
 62
 Notwithstanding this evidence, however, and in deference to the policies of judicial noninterference and avoidance of premature review that underlie the exhaustion requirement, I would be reluctant to find a fixed and final position on the part of the Secretary if I were convinced that the Secretary would yield to a court decision following full administrative review. Therefore, what really clinches this case for me is the Secretary's posture toward judicial declarations that displease SSA. In Finnegan v. Matthews, 641 F.2d 1340 (9th Cir.1981), the Court of Appeals for the Ninth Circuit held that payments to certain recipients of disability benefits could not be terminated absent proof of material medical improvement or of commission of clear and specific error during the prior determination. Following this ruling, Louis B. Hays, Associate Commissioner of SSA's Office of Hearings and Appeals, sent a memorandum to, inter alia, all administrative law judges:
 
 
 63
 I want to draw your attention to Social Security Ruling SSR 82-10c in the January 1982 quarterly Rulings publication, indicating [SSA's] non-acquiescence in the Court's decision. Under SSA policy, it is not necessary to show that there has been improvement in the claimant's condition or any error in the prior State determination for benefits to be ceased....
 
 
 64
 ....
 
 
 65
 Social Security Ruling SSR 82-10c is binding on all components of SSA including administrative law judges and the Appeals Council (20 C.F.R. 422.408). SSA's policy must be followed in cases involving the issue of cessation of disability, including cases involving claimants who reside within the jurisdiction of the United States Court of Appeals for the Ninth Circuit.
 
 
 66
 Memorandum from Louis B. Hays to All RCALJs, ALJICs, and ALJs (Feb. 23, 1982), App. at A43.[9] It thus appears that, when the Secretary has taken a final position on a disputed question, he will continue to adhere to, and require compliance with, those views even after a Court of Appeals has resolved the issue against him. Under these circumstances, exhaustion of administrative remedies becomes a mere exercise in futility, both for the claimants and for the courts. It makes far more sense to allow the claimants to litigate the case and, if successful, to obtain a decree enforceable via contempt proceedings.
 
 
 67
 C. Substantial Hardship and Irreparable Harm
 
 
 68
 I further conclude that it would cause great hardship, and possibly irreparable harm, to require plaintiffs to exhaust all levels of administrative review before filing this suit in the courts. What we said in Liberty Alliance still holds: "the plaintiffs here are largely dependent upon public assistance.... An erroneous termination or substantial reduction of this assistance would severely burden their subsistence. Requiring each plaintiff fully to exhaust his administrative remedies, especially where, as here, such exhaustion would be futile, would increase this burden." 568 F.2d at 345; accord Mattern v. Mathews, 582 F.2d 248, 253 (3d Cir.1978), cert. denied 443 U.S. 912, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979). I also cannot help but note the time, effort, and anxiety involved in pursuing a claim through the administrative levels.[10]
 
 
 69
 Accordingly, I concur in the majority's judgment that jurisdiction under section 405(g) lies with respect to the federal defendants. It does not appear, however, that that provision may be invoked to assert jurisdiction over the state defendants. I therefore must consider whether any other jurisdictional basis exists with respect to those individuals.
 
 
 70
 III. Mandamus Jurisdiction: 28 U.S.C. Sec. 1361
 
 
 71
 Plaintiffs also rely on 28 U.S.C. Sec. 1361 (1976)[11] as an additional basis for jurisdiction over the federal defendants, and the majority agrees, citing "the controlling Mattern v. Weinberger [519 F.2d 150, 156-57 (3d Cir.1975) ] precedent" in support of that position, Majority op. at Part III.B.2. I note at the outset that the judgment in Mattern was vacated by the Supreme Court and the case remanded for further consideration in light of Mathews v. Eldridge, supra. Mathews v. Mattern, 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 (1976). When we reheard the case, we expressly reserved the question whether mandamus jurisdiction lies in an action involving Social Security procedures. Mattern v. Mathews, supra, 582 F.2d at 253 ("Like the district court below, ... we do not need to reach the question of mandamus jurisdiction."). Although we observed that "it is far from clear that section [405(h) ] bars mandamus jurisdiction in this case," id., it seems apparent to me that any further consideration of the availability of section-1361 jurisdiction must be de novo.
 
 
 72
 Because I agree with the majority that jurisdiction as to the federal defendants lies under section 405(g), I reach the section 1361 question only to decide whether jurisdiction lies over the state defendants.[12] I first will discuss whether section-1361 jurisdiction is available at all in cases that fall within section 405(g); I then will turn to the question whether this is an appropriate case in which to assert mandamus jurisdiction.
 
 A. Availability of Mandamus Jurisdiction
 
 73
 The major obstacle to the availability, in theoretical terms, of jurisdiction under section 1361 is section 405(h), which might appear to channel all suits involving SSA procedures through section 405(g). As we have seen, section 405(h) bars resort to section 1331, see Weinberger v. Salfi, supra; it also precludes invocation of section 10 of the Administrative Procedure Act, see Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). However, the Supreme Court has thrice reserved the question whether section 405(h) preempts mandamus jurisdiction, see Califano v. Yamasaki, 442 U.S. 682, 697-98, 99 S.Ct. 2545, 2555-56, 61 L.Ed.2d 176 (1979); Norton v. Mathews, 427 U.S. 524, 529-30, 96 S.Ct. 2771, 2774-75, 49 L.Ed.2d 672 (1976); Mathews v. Eldridge, supra, 424 U.S. at 332 n. 12, 96 S.Ct. at 901 n. 12, and this Court has not previously taken a position on this question, see Mattern v. Mathews, supra, 582 F.2d at 253.
 
 
 74
 The Court of Appeals for the Second Circuit, however, has addressed the issue and has held that section 405(h) does not override mandamus jurisdiction. See Ellis v. Blum, supra, 643 F.2d at 78-82.[13] In a comprehensive and scholarly opinion, Judge Friendly analyzed the legislative history of the relevant statutes and concluded that Congress never manifested an intention to preclude assertion of section-1361 jurisdiction in SSA cases. The Court of Appeals for the Ninth Circuit has reached a similar conclusion, holding that "language prohibiting reliance on the federal question or mandamus provisions for any action 'to recover on a claim arising under' the [Social Security] Act only applie[s] to actual claims for benefits." Ringer v. Schweiker, 697 F.2d 1291, 1293 (9th Cir.1982) (quoting section 405(h)), cert. granted Heckler v. Ringer, --- U.S. ----, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983); accord Ryan v. Shea, 525 F.2d 268, 271-72 (10th Cir.1975).
 
 
 75
 As does the majority, I agree with the reasoning of Ellis v. Blum and see no need to repeat Judge Friendly's careful analysis. I therefore concur in the majority's conclusion that, at least in some cases, section-1361 jurisdiction is available to review SSA procedures.
 
 
 76
 As I noted above, I reach the mandamus question only in order to decide whether jurisdiction exists over the state defendants. Section 1361, by its terms, applies only to "officer[s] or employee[s] of the United States or any agency thereof" and thus might be read as not covering state officials such as the defendants in this case. These state defendants, however, are essentially the alter egos of their SSA counterparts and effectively are officers, employees, or agents of an agency of the United States.[14] Thus just as I would not allow section 1331 to be used to gain jurisdiction over these individuals, see supra Part I, I conclude, on the facts of this case, that the state defendants fall within the ambit of section 1361. Cf. Chaudoin v. Atkinson, 494 F.2d 1323, 1329 (3d Cir.1974) (finding section-1361 jurisdiction over Adjutant General of Delaware National Guard because "Adjutant General of Delaware is an agency or an agent of the United States and therefore within the purview of Sec. 1361") (emphasis added).
 
 
 77
 The next question, then, is whether this is an appropriate case for the assertion of mandamus jurisdiction.
 
 B. Appropriateness of Mandamus Jurisdiction
 
 78
 Precisely why it believes mandamus jurisdiction to be appropriate in this case is something that the majority does not explain. I therefore will set forth the reasons why I believe that plaintiffs should be permitted to proceed against the state defendants under section 1361.
 
 
 79
 I begin with the proposition that courts traditionally have been reluctant to assert mandamus jurisdiction for the same reason that they generally have required exhaustion of administrative remedies: the desire to avoid premature judicial review and to minimize interference with the functioning of a coordinate branch of government. Cf. Ellis v. Blum, supra, 643 F.2d at 81 (allowing assertion of section-1361 jurisdiction only because it would result in a "minimum of interference" with SSA's judgment). Thus, we have held that mandamus is an appropriate remedy "only where a clear duty is owed the plaintiff or there is an abuse of discretion," Grant v. Hogan, 505 F.2d 1220, 1225 (3d Cir.1974); accord Donovan v. United States, 580 F.2d 1203, 1208 (3d Cir.1978). But when section-405(g) jurisdiction lies even in the absence of exhaustion of administrative remedies, as it does in this case, see supra Part II, I believe that the presence of those factors prompting judicial waiver of exhaustion requirements also insures that assertion of mandamus jurisdiction will not unduly threaten the prerogatives of the concerned agency.
 
 
 80
 As I discussed above, a court may waive section 405(g)'s exhaustion requirements only when (1) the claims presented to the court are substantially collateral to a substantive determination by the Secretary on the question whether to continue or terminate payment of disability benefits; (2) the Secretary has taken a fixed and final position on the litigated issues; and (3) the plaintiffs would suffer substantial hardship or irreparable harm if required to exhaust administrative remedies. Because I conclude that the issues presented by plaintiffs are in fact substantially collateral to plaintiffs' claims for benefits and that defendants have taken a fixed and final position on those issues, I do not see our assumption of jurisdiction under section 405(g) or section 1361 as interfering impermissibly with the operations of SSA or its affiliated state agencies. In short, I see little practical difference in a case such as this between the two jurisdictional bases, as both are informed by the same policy considerations.
 
 
 81
 It is true, as I noted above, that our mandamus cases appear to require the existence of a "clear right" owed by the defendant agency or official to the plaintiff. The existence vel non of such a clear right to relief, however, would seem to go to the merits of the claim and relate to whether or not a writ of mandamus should issue. On remand, therefore, the district court will have to determine whether plaintiffs have a clear right to the relief they seek. I note, however, that our recent decision in Kuzmin v. Schweiker, supra, would appear to provide a solid basis for plaintiffs' claims relating to the medical-improvement standard and the presumption of continuing disability.[15]
 
 
 82
 Accordingly, I conclude that, because plaintiffs have satisfied the criteria of Mathews v. Eldridge, supra, and Liberty Alliance of the Blind v. Califano, supra, they may proceed by means of section-1361 jurisdiction[16] against the state defendants.[17]
 
 
 
 *
 Hon. Gerald J. Weber, United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Since the elimination of jurisdictional amount in 28 U.S.C. Sec. 1331 the jurisdictional grant in 28 U.S.C. Sec. 1343 appears to have little practical utility
 
 
 [2]
 Judge Weis has commented perceptively upon the costs resulting from the practice of federal agency nonacquiescence in decisions of the courts of appeals. See Goodman's Furniture Co. v. United States Postal Serv., 561 F.2d 462, 465-66 (3d Cir.1977) (Weis, J., concurring)
 
 
 [1]
 42 U.S.C. Sec. 405(h) (1976) provides, in relevant part: "No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."
 
 
 [2]
 While the Second Circuit allowed the Ellis plaintiff to proceed against the state defendants under Sec. 1331, it did so because of circumstances not present here. The Ellis court had "little doubt that ... the scope of Sec. 405(h) extends to suits in which claims against state officials are merely disguised disputes with the Secretary of the sort described in Secs. 405(g) and (h)," 643 F.2d at 76, but found that plaintiff had alleged "separate and distinct" claims against the state defendants and that there thus was "no reason to extend the ban of Sec. 405(h) to preclude Sec. 1331 jurisdiction" over those claims, id. These "separate and distinct" claims alleged that the state defendants had violated, in bad faith, the procedures authorized by the Secretary; plaintiff also sought damages against the state defendants to redress her emotional distress. Id
 A review of the complaint filed in the case sub judice does not reveal an assertion of "separate and distinct" claims against the federal and state defendants. Accordingly, the rationale of Ellis does not apply, and Sec. 1331 jurisdiction is not appropriate.
 
 
 [3]
 Section 405(g) provides, in relevant part:
 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.
 In addition, 42 U.S.C. Sec. 1383(c)(3) (1976) provides that "[t]he final determination of the Secretary after a hearing under paragraph (1) [relating to procedures for payment of benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Secretary's final determinations under section 405 of this title."
 
 
 [4]
 As we explained the question in Liberty Alliance:
 At issue ... is the proper interpretation of Sec. 1611(h) of the Social Security Act Amendments of 1972, Pub.L. No. 92-603, tit. III, Sec. 301, which provides that, in determining the amount of Supplemental Security Income benefits for blind persons, there shall be disregarded the greater of either the amount that could have been disregarded under the former state plan or the amount which would be disregarded under the relevant provisions of the Supplemental Security Income program. [Plaintiffs assert] that in addition to those forms of income specifically directed to be disregarded under the prior Pennsylvania plan, Sec. 1611(h) mandates that the Secretary disregard income which, because of the state plan's assessment of basic, special, and spousal needs, would have been excluded from the computation of benefits under the state plan.
 568 F.2d at 335-36. The claim, therefore, was purely mathematical.
 
 
 [5]
 We also noted that the Secretary's "firm position has been confirmed in this lawsuit, in which one plaintiff ... has fully exhausted all available administrative review." 568 F.2d at 346 (emphasis added). The majority thus may well be correct in its assertion that exhaustion by one plaintiff in Liberty Alliance was only "evidence of the fact that the Secretary has taken a final position on the legal issue," rather than a prerequisite for satisfying the exhaustion requirement in a class action, Majority op. at Part III.B.1
 
 
 [6]
 In propounding these three criteria, I have relied on the discussions in Salfi, Eldridge, and Liberty Alliance of statutory, rather than constitutional, claims. I read the claims set forth in plaintiffs' complaint as primarily statutory; I have significant doubts about their constitutional validity. However, by concluding that plaintiffs need not exhaust their statutory claims, I decide, a fortiori, that they need not exhaust their constitutional ones, which, according to Liberty Alliance, are subject to a lesser exhaustion standard, 568 F.2d at 346
 
 
 [7]
 As the Second Circuit recently said in Smith v. Schweiker, 709 F.2d 777, 780-81 (2d Cir.1983):
 Exhaustion ... would frame the issue in a much clearer fashion than is possible when it is posed as an abstraction. While the legal issue raised by plaintiffs may seem well-defined to them, it seems rather unformulated to us. What is meant by evidence of medical improvement, for example, is somewhat ambiguous. If disability status has been previously determined on the grounds of paralysis from the neck down, a video tape of the claimant playing football might well seem sufficient evidence to terminate benefits. Yet plaintiffs seem at times to be arguing that unless the claimant's health has improved, i.e. the paralysis has disappeared rather than having been initially misdiagnosed, a termination of benefits is unlawful however conclusive the evidence of no present disability. At other times they seem to require medical testimony as essential to termination. It is also not clear why, if the initial disability determination was based on a finding of a lack of suitable jobs in the economy, evidence of medical improvement is necessary where a different finding as to the availability of such jobs based on new evidence is made. We note this, not to comment on the merits, but to suggest that the claim raised by plaintiffs may seem far stronger, and certainly more clearly framed, when urged in the context of a concrete case, developed in the review process, with a factual record setting out the reasons for the prior ruling and subsequent termination, than when posed in the abstract.
 
 
 [8]
 But cf. infra note 14 (discussing Kuzmin v. Schweiker, 714 F.2d 1233 (3d Cir.1983), and what evidence a claimant must present in a disability-benefits termination proceeding)
 
 
 [9]
 Judge Weis has aptly commented upon a similar government litigation policy in Goodman's Furniture v. United States Postal Serv., 561 F.2d 462 (3rd Cir.1977) (Weis, J., concurring)
 
 
 [10]
 Defendants seek to answer the irreparable-harm argument by focusing on recent amendments to the Social Security Act granting terminated claimants the option of continuing benefits until an administrative law judge reviews the state agency's determination. Pub.L. No. 97-455, 96 Stat. 2497 (1983). If the ALJ affirms the termination, the continued benefits will be considered overpayments subject to recoupment at the discretion of the Secretary
 This new law, however, does not significantly relieve the hardship to plaintiffs, for it expires in June 1984 and applies only to termination decisions made by state agencies between January 12, 1983, and October 1983. See Rivera v. Heckler, 568 F.Supp. 235 (D.N.J.1983). It therefore does not apply to plaintiffs, at least some of whom already had had their benefits terminated by the time this suit was filed in 1982, before the effective date of Pub.L. No. 97-455. Moreover, the new law does nothing to relieve the nonfinancial burdens imposed on these disabled plaintiffs.
 
 
 [11]
 Section 1361 provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."
 
 
 [12]
 I recognize that the complaint alleged Sec. 1361 as a basis for jurisdiction only over the federal, and not the state, defendants. However, "our freedom to predicate jurisdiction on theories not pleaded below," Ellis v. Blum, supra, 643 F.2d at 75; accord Mumford v. Glover, 503 F.2d 878, 882-83 (5th Cir.1974); Albert v. Chafee, 465 F.2d 367, 368 (9th Cir.1972) (per curiam); 1 J. Moore, Moore's Federal Practice p 0.60 at 623 n. 5 (2d ed. 1982); see Frederick L. v. Thomas, 578 F.2d 513, 516 & n. 6 (3d Cir.1978) (taking appellate jurisdiction under 28 U.S.C. Sec. 1651 though appellant had pled jurisdiction only under 28 U.S.C. Sec. 1291), convinces me that, at least in this case, plaintiffs' failure to rely on Sec. 1361 as to the state defendants does not bar my considering that provision as a jurisdictional basis
 
 
 [13]
 I do not read the Second Circuit's opinion in Smith v. Schweiker, supra note 7, as retreating substantially from the position announced in Ellis. Smith held that "[m]andamus jurisdiction does not lie where the claims are not against the Secretary for failure to comply but rather are directed at the propriety of the regulations themselves," 709 F.2d at 779; this holding would seem to imply that section 1361 may be used in some cases. I also note that Smith did not even cite the 1981 Ellis decision and, at any rate, presumably cannot overrule it
 
 
 [14]
 Plaintiffs therefore cannot proceed against the state defendants under 28 U.S.C. Sec. 1343(a)(3) (Supp. IV 1980), for the state defendants, in performing the roles delegated to them by federal statute, are not acting under color of state law; moreover, the Social Security Act is not legislation securing "equal rights" within the meaning of Sec. 1343(3), Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 620-23, 99 S.Ct. 1905, 1917-18, 60 L.Ed.2d 508 (1979). Accord Smith v. Schweiker, supra note 7, 709 F.2d at 780
 
 
 [15]
 We held in Kuzmin that, "once the claimant [in a disability-benefits termination proceeding] has introduced evidence that his or her condition remains essentially the same as it was at the time of the earlier determination [of disability], the claimant is entitled to the benefit of a presumption that his or her condition remains disabling." Kuzmin v. Schweiker, supra, at 1237
 
 
 [16]
 But cf. Smith v. Schweiker, supra note 7, 709 F.2d at 779 (holding that mandamus jurisdiction does not lie in case involving an unexhausted medical-improvement claim)
 
 
 [17]
 Even if my conclusion as to mandamus jurisdiction over the state defendants is incorrect, there would appear to be still another basis for jurisdiction over those individuals: pendent-party jurisdiction. The state defendants, as I have said before, see supra Parts I and III.A, are the alter egos of the federal defendants, and it would seem wasteful to prevent plaintiffs from including them in the proceedings
 Because plaintiffs allege basically identical claims against the state and federal defendants, and because the state defendants appear here only as agents of SSA, the concerns expressed in Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), which involved separate state-law claims brought against the defendant that plaintiff sought to add as a pendent party, do not seem to apply here and thus do not bar an assertion of jurisdiction. I also note that Aldinger purported to decide
 only the issue of so-called "pendent party" jurisdiction with respect to a claim brought under Secs. 1343(3) and 1983. Other statutory grants and other alignments of parties and claims might call for a different result. When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. Sec. 1346, the argument of judicial economy and convenience can be coupled with the additional argument that only in a federal court may all of the claims be tried together. As we indicated at the outset of this opinion, the question of pendent-party jurisdiction is "subtle and complex," and we believe that it would be as unwise as it would be unnecessary to lay down any sweeping pronouncement upon the existence or exercise of such jurisdiction.
 Id. at 18, 96 S.Ct. at 2422 (footnote omitted). Jurisdiction over the claims against the federal defendants, at least, would seem to be allowable only under 42 U.S.C. Sec. 405(g) or 28 U.S.C. Sec. 1361; thus, unlike those in Aldinger, the claims are exclusively within the province of the federal courts. Pendent-party jurisdiction therefore is more appropriate here than it was in that case. Cf. Stewart v. United States, 716 F.2d 755, 757-759 (10th Cir.1982) (allowing pendent-party jurisdiction in Federal Tort Claims Act suit over driver of Government vehicle who was employed by private operator of Government-owned nuclear-weapons facility).